STATE OF IOWA, Appellee, v. FRED POWERS, Appellant.

**WEAPONS:** Carrying Concealed Weapons—Evidence—Sufficiency.
1   Evidence reviewed, and held sufficient to sustain a conviction
    for carrying concealed weapons.

**CRIMINAL LAW:** Trial—Misconduct. The act of the county at-
2   torney, in attempting to offer the testimony which the accused
    had given in another case, does not constitute reversible mis-
    conduct when, by the sustaining of objections, neither the pur-
    pose of the county attorney nor the nature of the other case
    was revealed.

**CRIMINAL LAW:** Trial—Misconduct in Argument—Curing Error.
3   Sustaining objection to improper argument, with prompt direc-
    tion to the jury to disregard the same, held to render the error
    harmless, in view of the record.

**APPEAL AND ERROR:** Reservation of Ground—Naked Objection.
4   A naked objection, without specification of any kind, presents no
    question on appeal.

**CRIMINAL LAW:** Trial—Instructions—Punishment—Duty of
5   Court and Jury. It is not error for the court to instruct that
    the punishment to be meted out to the accused, in case of con-
    viction, is a matter for the consideration of the court, and not
    of the jury.

**CRIMINAL LAW:** Appeal—Modification of Sentence. On appeal
6   from conviction for carrying concealed weapons, *held*, in view
    of the record and the immature age of the accused, that an in-
    determinate sentence of two years in the reformatory should
    be reduced to 30 days in the county jail.

*Appeal from Cherokee District Court.*—W. D. BOIES, Judge.

MONDAY, JUNE 25, 1917.

DEFENDANT was indicted, tried and convicted of the crime of carrying a concealed weapon, and, being but 18 years of age, was sentenced to the reformatory at Ana-

mosa for a period not to exceed two years.   Defendant appeals.—*Modified and affirmed.*

*Wm. Mulvaney* and *Molyneux & Maher*, for appellant.

*H. M. Havner*, Attorney General, and *H. H. Carter*, Assistant Attorney General, for appellee.

PRESTON, J.—There are 23 assignments of error, some of which are duplications, and as to others, we think the record is not in such condition that the objections now argued can be raised.

1. WEAPONS: carrying concealed weapons: evidence: sufficiency.

1.   Some of the assignments may be considered together.   It appears that, on the evening of October 28, 1916, defendant came from his home to a hardware store, and brought with him from home an empty revolver; in the store he purchased a box of cartridges; the clerk who sold the cartridges loaded the revolver and handed it to the defendant; the defendant then placed the loaded revolver in the side pocket of his coat; a few minutes thereafter, he left the store; soon after that, he was seen in front of a pool hall with the revolver in his hand, and in a short time, a shot was fired, and the revolver found lying on the sidewalk near where defendant stood. It was defendant's purpose to go out to practice target shooting the next day.

It is the contention of appellant that the evidence is undisputed that the revolver was not carried concealed upon the person of the defendant.   A number of the assignments of error are based upon this contention that there was no evidence to justify the court in submitting the case to the jury, and that the court erred in instructing the jury on the subject, and erred in refusing to give an instruction asked by the defendant, based upon the assumption that there was not sufficient evidence to take the case to the jury.   Cases are cited to the point that, to consti-

tute a concealment, the weapon must be hidden or concealed from the view, etc.

We cannot agree with counsel for appellant in his claim that the evidence is not sufficient. The clerk in the store who sold the cartridges to the defendant and loaded the revolver testifies that, when he loaded the revolver, the defendant put it in his side pocket, and that it was out of view, and that he could not see the revolver after defendant put it in his pocket, and that defendant then went out of the store. He thinks the defendant put the revolver in his left coat pocket, and says that he looked at defendant, and that he could not see the revolver; that defendant turned around, and the pocket he had the revolver in was toward the witness; that defendant was right across the counter from him; and that, as defendant turned around, he turned his left side toward the witness. This evidence as to whether, at that time, the weapon was concealed or not, is not disputed by any other witness, except that the defendant testifies that he put the revolver on top of a box of matches and handkerchief in his pocket, which was a shallow pocket; and says, "The revolver could not help but be exposed to view as I had it in my pocket." This is somewhat in the nature of a conclusion, as the witness does not say that he looked at his pocket or saw the revolver exposed in his pocket. Another witness testifies that afterwards he saw defendant in front of a pool hall, and saw defendant have a revolver in his hand, and that he did not see it before that; that he saw the revolver about five minutes after he came where defendant was, and that defendant did not have the revolver in his hand when witness came; witness did not see where he had it. Another witness says that, on the night in question, he saw defendant on the street, and saw him have a gun in his pocket. The witness says that he is almost positive it was in his right-hand pocket, and that at that time there was about half

an inch of the butt sticking above; that witness was close
to defendant—about 3 or 4 feet; that it was either in front
of the pool hall or just across the street,—he does not 're-
member which,—but he says he saw the revolver. This
witness did not see defendant have the revolver in his hand
after he crossed the street. Witness walked across the street
with defendant. Another witness testifies that he saw de-
fendant on the street, but did not take any particular no-
tice of him, and did not see defendant have a revolver; that
he heard a shot 5 or 6 minutes after he saw defendant;
was 5 or 6 feet away; did not see any revolver in defend-
ant's hands; saw a revolver lying on the sidewalk.

This is the substance of the testimony, and we think
it is sufficient to take the case to the jury, and that the ver-
dict has sufficient support. The court instructed the jury
that the words of the statute, "to have concealed upon his
person," as used in the statute, means to have out of sight
upon his person. This is in substantial accordance with
one of the instructions offered by the defendant. But, as
said, his contention was that there was no evidence to
show that the revolver was concealed.

2. It is thought by appellant that the
2. CRIMINAL LAW: county attorney was guilty of misconduct
trial : miscon-
duct.          in his closing argument and in attempting
to introduce certain evidence. The only
part of the closing argument which the defendant objected
to was this:

"Now I shall not go into all these fellows said, but I
will leave it to you to say whether they are talking sense
or nonsense, and whether they are trying to fool the jury
and get the jury to commit some ridiculous thing as anoth-
er jury—"

At this point, counsel for defendant objected, and the
court sustained the objection. This will be considered in
connection with the other alleged misconduct and in con-

nection with an instruction given by the court. Before the evidence for the State was closed, we find this record:

"Mr. Smith: The State offers in evidence a duly certified transcript of the testimony of Fred Powers when he was sworn as a witness in the case of—(Defendant objects at this time to any reference to any other case as immaterial and improper.) The Court: It is sustained, because Fred Powers has not been sworn as a witness in this case, and the testimony that he may have given in some other case is immaterial and incompetent. Mr. Smith: I want to show by this testimony— The Court: I know what you want to show and the court says you can't show it. (Defendant objects to any further offers as misconduct on the part of counsel.) Mr. Smith: It is no misconduct. The Court: Counsel has the ruling of the court. Mr. Smith: Will the court allow me to make no record of the showing? The Court: No, sir, the court will not allow you to make any further record than you have made. Mr. Smith: The record don't show what I want to do, what I propose to offer. (Defendant objects to the continued remarks of counsel as continued misconduct. Sustained and plaintiff excepts. The State offers in evidence the revolver and the box of cartridges. Here the State rests.)"

It is possible that the State would not be entitled to offer in evidence the certified transcript of the testimony of a witness in another case without some further foundation's being laid that it was the transcript of his testimony, and that the defendant did so testify. But that objection was not made. It does not appear what the prosecutor's purpose was in seeking to introduce the transcript, and it is possible that all the transcript would not be admissible. It may be that there were statements made by defendant on another trial which would be perfectly proper to show as an admission of the defendant's as to some fact that would be relevant and material to some of the issues

in the instant case: that incidentally this would disclose that there had been another case of some kind, would be the defendant's misfortune.  The trial court would not permit the prosecutor to show what his purpose was, or to make any further record.  The defendant did later testify in this case and testified:

"The revolver you show me is the one Hallabauer (the store clerk) loaded for me.  It is my revolver."

To illustrate:  Had he so testified on another trial, this would be competent as an admission, in view of the fact that the revolver found on the sidewalk was not definitely shown by the witnesses testifying in this case to have been the defendant's revolver.  The contention of appellant is that the prosecutor was improperly attempting to show something in regard to a former trial.  He was not permitted to go that far, but he was stopped by counsel for defendant and by the court, and nothing was permitted to reach the jury even in the question which would indicate the character of the other case or the parties thereto.

It should be borne in mind here that the State is not asking a reversal because of the exclusion of its offered testimony, but the question is whether the prosecutor was guilty of misconduct in attempting to show what, so far as we know, may have been perfectly proper as an admission of some matter given by witness on the trial in another case.  As to this matter and the part of the closing argument objected to, the court sustained the defendant's objection, and instructed the jury:

"Something has been said by counsel for the State with reference to 'another case,' but you are instructed that the defendant is on trial upon charges preferred in this indictment, and, in considering this case, you will give no thought to any other case, and determine this case solely upon the testimony that has been received upon this trial."

We think there was no misconduct in
**3. CRIMINAL LAW:**
**trial: miscon-**
**duct in argu-** the county attorney's making the offer, and
**ment: curing** if there was any in regard to the sentence
**error.** referred to in the closing argument, it was
cured by the court's sustaining the objec-
tions, and by the instruction referred to.    It is our con-
clusion that there was no prejudicial error at this point.

There are some other minor matters
**4. APPEAL AND** which we shall refer to briefly.    The in-
**ERROR: reserva-**
**tion of ground:** structions asked by the defendant are, for
**naked objec-** the most part, argumentative.    What, has
**tion.**
already been said covers others as to the
law of the case and the fact that it is necessary that the
weapon should be concealed, and others are covered by in-
structions given by the court.    A clause in Instruction No.
2, given by the court on the question of reasonable doubt,
is criticized.    This clause is as follows:

"It is your duty to seek the truth and not to hunt for
doubts.    A fanciful, forced or captious doubt is not a rea-
sonable doubt."

The exception to this instruction taken at the trial
gives no reason why the language used was improper, and
counsel has not in argument here advised us as to what he
claims is objectionable in this language.    No other part of
this instruction is complained of.

A part of Instruction No. 5, given by
**5. CRIMINAL LAW:** the court, is criticized.    In this, the court
**trial: instruc-**
**tions: punish-** refers to the fact that counsel for defend-
**ment: duty of**
**court and jury.** ant in argument had mentioned the pun-
ishment that might be pronounced by the
court in case of defendant's conviction, and told the jury
that the duty and responsibility in that respect were for
the court, and that the duty and responsibility of the jury
end when they shall have determined from the testimony
whether defendant is guilty or not guilty of the offense

charged. We are cited to no case by appellant to sustain his contention that the instruction is improper. The point seems to have been ruled against appellant's contention in *State v. McGhuey,* 153 Iowa 308, at 312. There may be some other of these minor matters not specifically noticed, but they have all been considered.

3. It is thought by appellant that, in

**6. CRIMINAL LAW: appeal: modification of sentence.** view of defendant's youth, the court should not have imposed the extreme penalty, and in this we are inclined to agree. We recognize the fact that, in many cases, the trial court may be aware of local conditions which are not known to the appellate court, and ordinarily, we are not disposed to interfere with the discretion of the trial court in the matter of sentences. It is no doubt true that the purpose of the legislature in increasing the penalty for this offense was to discourage the carrying of concealed weapons. Reasons are given in argument why, in some cases, the extreme penalty should be imposed. In pronouncing sentence, the remarks of the trial court were taken down and made of record, and the court stated in part:

"You know better than I do what followed as a result of your carrying a concealed weapon. While you have been acquitted of the charge preferred against you on which you were tried for what did happen on account of your carrying a concealed weapon, the court feels that this statute was passed in order that cases arising as this one did may afford some adequate punishment for carrying concealed weapons, under the statute, in view of the results."

Though it does not appear in the record, it is conceded in argument, substantially, that the revolver was dropped, and in some way discharged and killed a bystander, and that this is the matter referred to by the court in the remarks before quoted. It is likewise conceded that defendant was tried for manslaughter and acquitted. But it does

not appear, and it is not claimed, that the fact that the defendant's revolver was concealed on his person a part of the time had anything to do with the discharge of the weapon and the killing. The inference we draw from the little information we have on this is that it was dropped in some manner when the defendant had it in his hand. However this may be, we are unable to see how the concealment of the weapon—and that is the gist of the offense under the statute—could have anything to do with its discharge. There is no claim, either, that there was any altercation between defendant and the person killed. Neither is it claimed that the extreme penalty was imposed because the offense for which defendant was convicted was not his first offense. As we understand the record, it was on the ground before stated. The statute as it now reads (Section 4775-11a, Code Supp., 1913), is that the punishment shall be a fine of not more than $500, or imprisonment of not more than two years, or both such fine and imprisonment, provided that, in case of the first offense, the court may, in its discretion, reduce the punishment to imprisonment in the county jail for a term not more than three months, or a fine of not more than $100.

From anything appearing in the record or in argument, we think we ought not to infer that a young man of the age of defendant has been in the habit of carrying concealed weapons. Under all the circumstances before us, we reach the conclusion that the punishment of the defendant ought not to be more than a jail sentence, and the judgment will be reduced to 30 days in the county jail of Cherokee County, and his sentence is reduced to 30 days in the county jail of Cherokee County, to which he will be committed.

As so modified, the judgment is affirmed.—*Modified and affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.