CLARENCE GREGORY, Appellant; v. CHICAGO, ROCK ISLAND & PAC. RY. Co.

**Railroads:** INJURY TO SERVANT: INCOMPETENCY OF FELLOW SERVANT: I INSTRUCTION. In an action by a servant for personal injury on the ground of negligence of the master in employing and retaining an incompetent fellow servant, the plaintiff must show the employment and incompetency of the fellow servant at the time of the accident and that such incompetency caused the accident; he can not recover by showing negligence in the original employment without showing that the employment and incompetency continued up to the time of the injury. Under this rule an instruction that plaintiff must prove that his injury resulted from the negligence of the master in employing and retaining the fellow servant with knowledge of his incompetency was not erroneous because using the words employing and retaining conjunctively.

This is especially true where the plaintiff by his pleading, in his proof and a requested instruction, treated the defendant's liability as growing out of the negligent employment and retention of the fellow servant.

**Same:** REQUESTED INSTRUCTIONS. Where the court has given an instruction at the request of a party, using terms conjunctively, he can not thereafter require the court to give an instruction using such terms disjunctively; especially without first asking a withdrawal of the instruction given.

**Contributory negligence:** EVIDENCE. In an action for injury to a servant evidence of the extent of his service and experience in the work is admissible on the question of contributory negligence; but where it conclusively appeared that the servant was doing the particular work for the first time on the day of his injury, error in excluding evidence of his previous experience in that work was not prejudicial.

**Witnesses:** EXAMINATION THROUGH AN INTERPRETER. The examination of a witness through an interpreter is largely a matter within the discretion of the trial court. The proper method, however, is for the interpreter to be impersonal, to require that all questions to the witness be in the second person, repeated by the interpreter without remarks of his own, and that the answers be repeated literally by the interpreter in the first person. The interpreter should act as a phonograph.

**Appeal:** BILL OF EXCEPTIONS: ARGUMENT. It is the privilege of a party to incorporate in a proper bill of exceptions any prejudicial matter not otherwise appearing, and failing to do so he can not state such matter in argument as the basis of complaint.

*Appeal from Appanoose District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, FEBRUARY 11, 1910.

THIS is an action for personal injuries. There was a trial and a submission of the case to the jury, which rendered a verdict for the defendant. Plaintiff appeals. *Affirmed.*

*Howell & Elgin,* for appellant.

*Carroll Wright, J. L. Parish,* and *Porter & Green-leaf,* for appellee.

EVANS, J.—Some of the undisputed facts in the case are that the plaintiff was employed by the defendant as a common laborer in the city of Chicago on July 19, 1906. He was engaged in service in handling freight at a warehouse of the defendant. At the time of the accident, July 26, 1906, he was assisting in the loading of sacks of sugar out of the warehouse into a car. These sacks of sugar weighed about one hundred lbs. each, and were piled in ranks in the warehouse eight or ten sacks high. They were loaded on the truck in the warehouse, and trucked into the car over a gang plank. The plaintiff and one Stuart were loading the sacks upon a truck, and Yockovitch, a young Austrian, who could not speak English, was handling the truck. The usual method of bringing the sacks down from the upper layers was to take out a sack near the bottom and let those above roll down. During the progress of rolling, the workmen stepped back to avoid the falling sacks. This was what the plaintiff was attempting to do at the time of the accident. As he stepped back, however, to get out of the way, he collided with the truck which was in charge of Yockovitch, and was caught by the falling sacks in such a way that his leg was broken. His charge of negligence against the defendant is that Yockovitch was an incompetent person, and that the defendant was negligent in employing and retaining him. He charges that he was injured wholly through the fault of Yockovitch in bringing the truck up behind him at this particular juncture, and that he himself was free from negligence. Whether Yockovitch was incompetent as a common laborer, and whether he was at fault in the placing of his truck, and whether plaintiff himself was not at fault, are all questions in dispute under the evidence. And they furnished the principal dispute so far as the facts are con-

cerned. The record is not large, but the case is now presented to us upon thirty-four assignments of error, all of which are elaborately argued. We can not notice all these points within the proper limits of an opinion, but we will give our attention to those upon which the appellant seems to place the principal reliance.

I.   Counsel for appellant have very properly pointed out to us what they deem to be the most decisive point in the case, and we will give that our first consideration.

**I. RAILROADS: injury to servant: incompetency of fellow servant: instruction.**   In his petition, the plaintiff charged the negligence of the defendant in the following words: "The defendant was negligent in employing and retaining the said Peter Yockovitch, with its knowledge of his incompetency to perform his duties with safety to his coemployees, and the said negligence was the cause of plaintiff's injury." In stating the issues to the jury in its instructions the trial court adopted from the petition the language above quoted. The third instruction, on the subject of burden of proof, charged the jury that the burden was upon the plaintiff to prove "that said injury resulted from negligence on the part of the defendant in employing and retaining said Yockovitch with knowledge of his incompetency." Other instructions also directed the attention of the jury to defendant's alleged negligence in "employing and retaining" said Yockovitch. Appellant's complaint is that this laid upon the plaintiff undue burden, in that it required him to prove both grounds of alleged negligence, whereas it was sufficient if he proved one. The allegation of the petition is that Yockovitch was originally employed only two days before the accident, and the undisputed evidence is that such original employment occurred only a very few days prior to such accident.

The plaintiff himself presented to the court certain requested instructions, which were given by the court as numbers fifteen and sixteen, and were as follows:

(15) Plaintiff claims that defendant's employee Peter Yockovitch was habitually careless, negligent and incompetent in the way in which he did his work in the various ways as pointed out in the evidence, and claims, further, that the defendant's boss, Henry, had actual notice of said habitual negligence and incompetence, and claims further that, even though the said Henry did not receive actual and personal notice of the negligent acts and general incompetence, yet that defendant should be charged with such notice, in that the said negligent acts and incompetence of said Yockovitch were so general and so uniform and habitual that the said boss should have ascertained the same, and that the defendant company was negligent in that it retained said Yockovitch in its service. (16) You are instructed that it is the duty of the boss, Henry, to not only have general supervision over the men in his employ, but also to exercise ordinary care in inspecting their work, to the end that he might ascertain whether said employees were competent and careful men in their work, or whether or not they were habitually negligent and incompetent, because the law imposes the duty upon the defendant company to exercise ordinary care in the securing and retaining of none but competent, careful men. Now, if you find that the employee Peter Yockovitch was incompetent, and habitually careless in his work, and that the said boss, Henry, had personal knowledge of said fact from direct notice, or otherwise, or that said negligence and incompetence were so apparent, continual and habitual as that the defendant should have learned the same by the exercise of ordinary care prior to the accident, then, and in either of said events, you are instructed that the defendant would be negligent; and, if you further find that the negligence of said incompetent and negligent servant caused the plaintiff's injury, and further find by a preponderance of the evidence that the plaintiff himself did not contribute to his injury by his own negligence, your recovery will be for the plaintiff.

It is urged by appellant that the words "employing" and "retaining" should not have been stated conjunctively, but that they should have been stated disjunctively. This argument proceeds upon the theory that the word "employ"

has reference to the initial hiring as distinguished from the retention in service. He claims that it was enough for plaintiff to prove that the defendant "employed or retained" Yockovitch, on the theory that the two acts are separate and distinct. If, however, these words are to be distinguished and separated so as to cover two distinct acts, it would be manifestly incorrect for the court to instruct in the form contended for by the plaintiff. Such an instruction would permit the plaintiff to recover by showing the initial negligent employment of an incompetent, without showing that such employment and incompetency continued up to the time of the accident. Manifestly the only material question at this point was whether Yockovitch was an employee of the defendant at the time of the accident, and therefore whether the defendant had "retained" him in its employ up to that point with knowledge of his alleged incompetency. In a given case the original employment might have been in the long past. The fact that an employee was incompetent at the time of such original hiring would not be sufficient to furnish a basis of complaint to the plaintiff. But if the defendant retained the employee and if the incompetence of the employee continued down to the time of the accident, these are the facts which would concern the plaintiff. An employee incompetent when originally hired, does not necessarily continue incompetent.

As an abstract proposition, therefore, if the plaintiff is entitled to separate the words "employ" and "retain," as referring to separate acts and separate points of time, it is not correct to say that he could recover upon proof of either alleged ground of negligence. It would be theoretically necessary for him to prove that the employment and the incompetency existed at the time of the accident and that such incompetency was the cause of the accident. But we have no occasion in this case to analyze

this expression so critically. It is manifest that the plaintiff in his petition, and in the requested instruction number sixteen, used the words synonymously and as descriptive of a continuous act of the defendant, namely, the retaining of Yockovitch in its employ with knowledge of his incompetency. The petition showed the original hiring and the retaining to be practically simultaneous. The evidence was to the same effect.

After the court had read his instructions to the jury, including instructions fifteen and sixteen, requested by the plaintiff, the plaintiff presented and requested the following

2. SAME: requested instructions.

instruction: "The plaintiff claims two things in regard to the defendant's negligence: First, that the defendant company was negligent in employing Peter Yockovitch; . . . or, second, that said company was negligent in retaining him in their employ after he had been employed. That is, that defendant was negligent in employing said Yockovitch 'or' in retaining him in the company's service." The court refused this instruction, and the appellant assigns error thereon. Appellant has no ground of complaint, and for several reasons. The proposed instruction only purports to state the "claim" of the plaintiff. The court had already stated the issues precisely in accord with the petition. In so far as the proposed instruction attempted to state the grounds of negligence disjunctively, it was erroneous, as already indicated, in that the first alleged ground of negligence stated, when separated from the second, furnished the plaintiff no basis for recovery whatever. Further, the plaintiff had already used these terms conjunctively in his requested instructions fifteen and sixteen, which had been read to the jury, and he was not entitled as a matter of right to change front. If his theory is correct, the proposed instruction was inconsistent with instructions fifteen and sixteen, which had been given at his request, and he did not ask

to withdraw these. There is the further consideration that the fact of employment of Yockovitch by the defendant and of retaining him appears without dispute in the testimony on both sides. There was no possibility that the jury could find in the negative as to either fact, if they are to be deemed separate facts. The distinction, therefore, urged by the plaintiff, presented nothing substantial for the consideration of the jury, and the argument now presents nothing for our consideration but a play upon words.

II. One Stuart was the first witness for the plaintiff. He was working with plaintiff at the time of the accident, and had known him for some years. On direct examina-

3. CONTRIBUTORY NEGLIGENCE: evidence: prejudice.

tion he was asked to state what previous experience the plaintiff had had in that work. This question was ruled out, upon objection by the defendant, and the appellant complains of the ruling. As bearing upon the question of contributory negligence, it was proper for the plaintiff to show the extent of his experience in the work, and the question was proper, and an answer should have been permitted. Later, however, the witness was permitted to state that the plaintiff was doing this particular work for the first time on that day. The plaintiff himself and his father testified as witnesses, and both testified that the plaintiff had never had any previous experience, but had worked on the farm up to the time of his employment by the defendant. This fact was in no manner challenged by the defendant, either directly or by implication, and the erroneous ruling here indicated was clearly nonprejudicial.

III. Yockovitch was a witness for the defendant. He testified through an interpreter, and there is considerable confusion in his testimony. Appellant complains that the court permitted the interpreter "to hold extended conversations with the alleged feeble-minded witness, thereby

robbing the plaintiff of the force and effect of his imbecilic answers to the simplest questions."

**4. WITNESSES: examination through an interpreter.** The method adopted for the examination of this witness was that the attorneys directed their question to the interpreter, addressing him in the second person, and directed him to put the question to the witness, referring to the witness in the third person. After the witness had answered, the interpreter was asked to state what he said. The result of this method of examination was that the language of the witness was repeated by indirect quotation in the third person, instead of by direct quotation in the first person, and it makes a confusing record. Counsel for appellant seems to have contributed his full share toward the confusion by addressing questions repeatedly to the interpreter during the direct examination by defendant's counsel. The following is illustrative of these interjections by plaintiff's counsel, and the answers of the interpreter thereto: "Howell—Q. What did he say? What was he saying all that time? Interpreter—A. Yes, sir; he said it was the truck he was using. Howell—Q. He was not talking all that time just to make that answer, was he? I submit to the court that we are entitled to what the witness said. Q. What was it he said? Interpreter—A. I had to explain what I wanted. Howell—Q. What did he say then? What was it he said to you? Interpreter—A. He just asked me what I meant." At this point the trial court enjoined the "use of some common-sense in this matter." We can not say that this remark was erroneous or inappropriate. There is no hard and fast rule as to the method by which a witness shall be examined through an interpreter. It is necessarily a difficult and unsatisfactory proceeding, and the method of conducting it must be left to the sound discretion of the court in view of all the circumstances. In our view the ideal way to examine a witness through an interpreter is

to require the interpreter to be impersonal, and to require the attorneys to address no question nor remark to the interpreter. On the contrary, all questions should be direct to the witness in the second person. These questions should be repeated by the interpreter without any remarks of his own. The answer of the witness should be repeated literally by the interpreter in the first person, without any remarks of his own. That is to say, the interpreter should be a phonograph for the time being. This method, when followed, results in least confusion in the record. But it is often quite impracticable to enforce it. Some interpreters find it impossible to suspend their personality, and they talk of the witness in the third person. The attorneys often forgetfully address their questions to the interpreter, and then ask him what the witness said. It is a time when the "common sense" enjoined by the trial court is a great *desideralum,* and it needs to be well distributed and reasonably active in order to obtain the best results.

From the broken and confused character of this record at this point we can well believe that the court reporter found himself helpless to record everything that was said. The complaint and argument of the appellant are based upon assumptions which are not supported by the record. That is to say, the matters complained of do not appear in this record. It was the privilege of plaintiff to have incorporated, by proper bill of exceptions duly presented to the court and signed by him, any prejudicial matter which did not otherwise appear, Having failed to do so, he is in no position to state matters in his argument as a basis of complaint which do not appear in the record proper. The record as made discloses no ground of complaint to the plaintiff.

Other alleged errors are argued. We can not discuss them all. A large number of them relate to evidence and

instructions regarding the measure of damages. In view of the finding of nonliability by the jury, we can have no occasion to consider these. We have given careful consideration to all the alleged errors argued, and find nothing that would entitle the plaintiff to a reversal.

The record is not wholly free from technical errors, but such as we note are clearly nonprejudicial.

The judgment of the lower court must, therefore, be *affirmed*.