## VOLUME 130

---

# CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

---

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1911

---

(57 South. 532.)

No. 18,949.

STATE v. LAZARONE.

(Jan. 17, 1912.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW (§§ 419, 420*)—EVIDENCE—HEARSAY.

Testimony that on the day before the homicide witness gave decedent 25 cents, to spend 5 cents for mailing a letter and return the remaining 20 cents; and that decedent's father returned the 20 cents after the homicide, was not hearsay.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973–983; Dec. Dig. §§ 419, 420.*]

2. CRIMINAL LAW (§ 412*)—EVIDENCE—HEARSAY—DECLARATION AGAINST INTEREST.

Hearsay declaration against interest should only be admitted where it clearly appears that the declaration was against declarant's interest.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 894–972; Dec. Dig. § 412.*]

3. HOMICIDE (§ 163*) — EVIDENCE — IMMORAL ACTS BY ACCUSED.

That an accusation of murder depended on circumstantial evidence did not justify the admission of evidence that accused, a white man, had a room at the house of a colored woman, for the purpose of secretly meeting and spending the night with another colored woman, some three nights or more each week.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 310, 311; Dec. Dig. § 163.*]

4. HOMICIDE (§ 338*) — APPEAL — HARMLESS ERROR—EVIDENCE.

The admission of such evidence was prejudicial error.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 709–713; Dec. Dig. § 338.*]

5. CRIMINAL LAW (§ 400*)—EVIDENCE—SECONDARY EVIDENCE.

Evidence of persons present at the coroner's inquest as to statements then made by accused is not objectionable under the secondary evidence rule.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886; Dec. Dig. § 400.*]

6. COURTS (§ 56*)—INTERPRETERS—BIAS.

The appointment as court interpreter of a person who had contributed toward a fund for accused's prosecution avoids a conviction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 194–197; Dec. Dig. § 56.*]

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; G. H. Couvillon, Judge.

Joe Lazarone, Jr., was convicted of manslaughter, and appeals. Verdict set aside, and case remanded for further proceedings.

Coco & Couvillon, for appellant. Walter Guion, Atty. Gen., S. Allen Bordelon, Dist. Atty., and J. W. Joffrion (G. A. Gondran, of counsel), for the State.

PROVOSTY, J.   The accused was tried for murder, and found guilty of manslaughter, and sentenced to 20 years at hard labor.

The deceased was found dead by the wayside, slain by some person unknown. This was a few hours after he had received his week's wages, and been cursed and abused by the accused because of his refusal to pay a just debt of $2.85 out of said wages.

The theory of the defense was that the motive of the crime had been robbery; whereas, that of the prosecution was that it had been the animosity of the accused against the deceased for having refused to pay the debt, although having the money in his pocket.

Over the objection of the accused, a witness was allowed to testify that on the day before the homicide he had handed 25 cents to the deceased, to spend 5 cents in mailing a letter, and to return the remaining 20 cents; and that after the homicide the father of the deceased returned the 20 cents.

The purpose for which this evidence was offered, and the grounds on which it was objected to, are stated in the bill of exception, as follows:

"This evidence being for the purpose of showing the valuables found on the person of the deceased when he was found on the wayside dead, and to sustain the case in its theory as to the motive for the crime; that is, that the accused had killed the deceased for a debt of $2.85, which the latter had refused to pay the former a few hours before the killing, and to rebut the claim by the defense that the deceased, as a matter of fact, paid said debt to defendant. Said evidence being also intended to repel the idea that robbery could have been the motive for the crime.

"The evidence was objected to as being hearsay, and relating to matters which had taken place between the witness and the deceased out of the presence of the accused; and the evidence was admitted because 'simply leading to some other facts.'"

[1] The "other facts" in question are not stated; but the entire testimony of the witness is brought up in the bill, and, while we fail to discover wherein it was hearsay, since the witness does not say that any one told him anything, we fail to discover anything in it going to show that the 20 cents given by the father of the deceased to the witness had been found on the dead body; and, in the absence of such showing, we fail to see what relevancy the said testimony could have had. On the face of the bill, therefore, said testimony would appear to have been inadmissible; but we shall make no express ruling on the point, as the verdict has to be set aside on other grounds.

[2] To prove the nonpayment of the debt, the state sought to have a witness repeat a statement made to him by the deceased, to the effect that he had not paid the debt to the accused. This evidence was objected to as being hearsay, but was admitted as being a declaration against interest made by a person now deceased. The rule by which hearsay declarations of that kind are admissible in evidence has to be applied with caution. The fact of the declaration having been against interest ought clearly to appear. In the present case, we are very doubtful whether there was such opposition of interest. True the acknowledgment of owing a debt is, in general, against the interest of the speaker; but the motive of pecuniary interest may in particular cases yield to some stronger motive. In the present case, the deceased, at the time he is said to have made the statement in question, had just been cursed and abused by the accused in the presence of a crowd because of the nonpayment of the debt, and may well have made the said statement by way of assertion, or vindiction, of his own manhood, in order to show that he had not been intimidated into paying the debt. We shall make no ruling on the point, but leave it to the

good judgment of the learned trial judge, upon a full consideration of all the facts, on the retrial of the case.

The cases of State v. West, 45 La. Ann. 17, 12 South. 7, and State v. Young, 107 La. 618, 31 South. 993, cited by the learned counsel for accused in support of the contention that the declarations against interest of a witness, since deceased, are not admissible, are not in point. The rule is that such declarations are admissible. An exception is recognized to that rule in the case of an acknowledgment by a third person that he committed the crime of which the accused stands charged; and State v. West and State v. Young are mere applications of this exception. Prof. Wigmore (Wig. Ed. § 1476) criticises this distinction as arbitrary and illogical; but he recognizes that it is now too firmly founded to be shaken.

[3] The state was allowed to prove by a colored woman that the accused, a white man, had a room at her house which he, for the purpose of meeting clandestinely and spending the night with another colored woman, occupied three nights of the week, and sometimes oftener.

The reason given in the per curiam for admitting this evidence is as follows:

"The accused being on trial for murder, and the only evidence being circumstantial evidence, it is competent for the state to show where the accused resided, the places he ate, the places he slept, and the places he frequently visited when not at his own home; the habits, conduct, and all circumstances surrounding the disposition of the accused are admissible, especially when the evidence shows the accused was arrested the night following the evening of the homicide, which was at a different place of his habitual stays."

[4] Because dependent upon circumstantial evidence and for murder, the case was not emancipated from the rule that evidence, to be admissible, must be relevant. We see no connection between the murder and the fact that the accused had this room and met a colored woman there clandestinely;

and since this evidence was of a character to prejudice the case of the accused we think its admission was reversible error.

The next bill has reference to an attempted impeachment of one of the witnesses of the accused. The complaint is that the questions propounded for the purpose of laying the foundation for the impeachment were involved and complicated, and embraced different matters, some true and some false, so that it was not possible for the witness to give a single or even intelligent answer to them; and that the testimony adduced for the ostensible purpose of the impeachment went far beyond that purpose, bringing up new matters which not only had no tendency to impeach the witness, but were not even properly rebuttal.

This complaint, we find, is largely well founded. The mode of proceeding for laying the foundation for impeaching a witness, and for adducing the impeaching evidence, is very simple; and we assume that on the new trial of the case there will be no occasion for the renewal of the present complaint on that score.

[5] The next bill embodies the objection of the accused to the sheriff having been allowed to testify to statements made by the accused at the coroner's inquest. The objection is that the best evidence of the testimony given by the accused at the coroner's inquest is the testimony itself, as reduced to writing by the coroner and embodied in his procès-verbal of the inquest.

While the testimony, as reduced to writing by the coroner, may be the most reliable evidence of what the testimony was, it is not the best evidence in the sense of the rule of best evidence; or, in other words, the testimony of the other persons who were present when the testimony was given, and who heard and remembered it, is not secondary evidence, but is primary evidence; and, as such, is equally admissible with the written

report of the testimony. 30 Am. & Eng. Enc. p. 1100; State v. Farrier, 114 La. 579, 38 South. 460.

[6] The next and last bill was to the act of the court in choosing as interpreter a person who had been summoned as a witness for the state, and had contributed to a fund for the prosecution of the accused.

This alone is sufficient to vitiate the verdict. The person chosen to interpret into English testimony given in a tongue not understood by jury, court, or counsel must be absolutely disinterested, unprejudiced, and unbiased; and the mind of a person who has contributed towards a fund for the prosecution of an accused can hardly be said to be in that condition.

The verdict and sentence are therefore set aside, and the case is remanded, to be proceeded with according to law.