JOHN PAUCHER, Appellee, v. ENTERPRISE COAL MINING COMPANY, Appellant.

**NEW TRIAL:** Interested Interpreter. Basis for new trial is not furnished by the fact that plaintiff, without conscious fraud, called and used, in the trial of the case, an interpreter who, unknown to the court, jury, and opposing counsel, was interested in the outcome of the suit, when it appears that the testimony interpreted (a) was correctly interpreted, (b) was not vitally material, and (c) was practically without dispute in the record. (Sec. 4091, Code, 1897.)

*Appeal from Polk District Court.*—C. A. DUDLEY, Judge.

JUNE 24, 1918.

APPELLANT filed a petition for a new trial within one year after judgment was entered, asking that the judgment be set aside on the ground of fraud and collusion, under Section 4091 of the Code. The petition was denied, and defendant, appellant, appeals.—*Affirmed.*

*Clark, Byers & Hutchinson,* for appellant.

*S. F. Prouty* and *Mulvaney & Mulvaney,* for appellee.

Preston, C. J.—The petition alleged, substantially, that, upon the original trial, judgment was entered for $4,000, in favor of plaintiff and against the defendant; that appeal had been taken therefrom to the Supreme Court of Iowa. The matter had not been determined in the Supreme Court at the time the petition was filed, but it has been since, and affirmed. *Paucher v. Enterprise Coal Mining Co.*, 182 Iowa 1084. Appellant's petition for rehearing has been overruled.

The petition further alleged that, upon the trial of said cause, one Krantz was called and sworn as an interpreter to interpret the testimony of plaintiff and some of his witnesses, and took an oath that he had no interest in the case or the result of the trial; that, after judgment, defendant discovered that said interpreter was, in fact, interested in the case; that he had a written agreement with plaintiff, under which he was to receive 10 per cent of the recovery; that both the plaintiff and his counsel knew of the interest of said interpreter, at the time he was sworn; and that the defendant, the presiding judge, and the jury were not aware of the fact; that, with fraudulent intent, and to gain an unfair and unlawful advantage, they proceeded to take the testimony through said interpreter; that, on account of the reliance of the defendant, court, and jury upon the oath of Krantz, and on account of the silence of plaintiff and his counsel, verdict was rendered in favor of plaintiff and against defendant, and judgment was entered for $4,000; that defendant could not have discovered these facts with reasonable diligence before the end of the term; that it used due diligence; and that it has a good defense to plaintiff's action.

Plaintiff answered, and admitted that the interpreter had a contract with plaintiff, as alleged, and that Krantz acted as interpreter for plaintiff and another witness: he stated that Krantz was familiar with the language, and a suitable person to interpret: denied that Krantz stated on

oath that he had no interest in the controversy: stated that said interpreter was called by plaintiff with no thought or attempt to deceive the court, defendant, or its counsel, and that the plaintiff's counsel who called the interpreter to be sworn did not, at that time, know that the interpreter had any contract, or was to receive a part of the proceeds, but that the other attorney of plaintiff, who did know, was not there in person when the interpreter was sworn; that defendant knew that said interpreter had taken an active part in presenting the claim of plaintiff and in negotiating a settlement of the same; that the defendant has no defense.

There is a conflict as to whether the interpreter made the statement that he had no interest before he was sworn as interpreter or when he was sworn. There is testimony to that effect; but the reporter's transcript does not show that fact, and plaintiff introduced evidence to the contrary. Appellant concedes, in argument that, even though the interpreter did perjure himself, it was not on a matter directly connected with what was sought to be proved in the case, but only on the question of his qualification; and says that, technically, it was not perjury, and the statement, if made at all, was made to the judge before whom the interpreter was sworn, and that it was extrinsic from the case itself. The trial court made a finding of facts as to any conflict in the testimony, and such finding is conclusive upon us.

However, there is but little dispute in the testimony. Krantz is dead. It is shown that the interpreter's interest was not known by the trial judge in the first case, or by the jury or by defendant's counsel. Had this been known, it would have been a matter proper to consider, as affecting his credibility as a witness.

It is contended by appellant that an interpreter is more than a mere witness, and that he is, in a sense, an officer of the court. We are inclined to think this is so, under the circumstances of this case; and, were it not for some other

matters appearing in the record, which will be referred to later, we would be inclined to hold that defendant was entitled to a new trial.

Appellant cites *State v. Lazarone*, 130 La. 1 (57 So. 532); *State v. Thompson*, 14 Wash. 285 (44 Pac. 533); *State v. Deslovers*, (R. I.) 100 Atl. 64, 73; *Gregory v. Chicago, R. I. & P. R. Co.*, 147 Iowa 715, 723; *State v. Powers*, 180 Iowa 693; 14 Encyc. of Evidence, 119; also the statute; and *Wood v. Wood*, 136 Iowa 128; and *Graves v. Graves*, 132 Iowa 199, where the rule is stated that a new trial will not be granted for perjury, but may be, where there is extrinsic fraud. But these cases do not quite reach the question at issue here, unless, perhaps, it is the *Lazarone* case, supra. There is some language in that case which fairly tends to sustain appellant's contention; but that was a murder case, and was reversed on several different grounds, one of which was the use of an interested interpreter.

We shall not review the cases cited, but proceed to state some of the circumstances from which we conclude that defendant suffered no prejudice. Plaintiff was an Austrian coal miner, and had received a serious injury in defendant's mine. He could not speak, read, write, or understand the English language, and was ignorant of American law or proceedings in court. Krantz was a fellow countryman, working in the same mine, who had been in this country for some time, and could speak, read, and write both the English and Austrian languages. It is contended by appellee that it was necessary for plaintiff to have someone to assist him, and that he applied to Krantz; that this was necessary in order that plaintiff might employ an attorney, and look up evidence and look up matters necessary for trial, which plaintiff himself could not do; and that Krantz could not perform these services without loss of time from his work; and that plaintiff was unable to compensate him except there should be a recovery from the defendant; and that

these are the reasons for plaintiff's agreeing to pay Krantz compensation. The question as to the validity of such a contract is not before us. It is contended by appellee that defendant is in no position to complain, because, as soon as defendant's manager learned of the arrangement, he recognized and ratified it, and sought to use it for the benefit of the defendant, in that he offered to recognize the claim of Krantz to the 10 per cent of the recovery, and pay him the $400, without discount, if he would use his confidential relations and position with plaintiff to induce him to satisfactorily settle with the defendant. These propositions are not very material, perhaps, in this inquiry.

Without setting out the evidence bearing upon the point, we are satisfied that there was, in fact, no actual or conscious fraud on the part of plaintiff or his attorneys in the use of the interpreter. The fact that the interpreter was interested in the recovery was a material fact, and would have been available to the defendant as a ground of objection to his selection, had it been known. A person selected as interpreter ought to be disinterested, unprejudiced, and unbiased. If the fact of his interest were known, ordinarily the court would refuse to appoint such an one, if a competent disinterested interpreter were available. But, though interested, he was not legally incompetent to act as interpreter. But it is quite clear to us that defendant suffered no prejudice because of the matter complained of, and this appears affirmatively in the record. As said, there was no conscious fraud on the part of plaintiff or his attorneys. As said by the trial court, it was not suggested that true interpretation was not made of questions propounded, or of answers given by the witnesses whose testimony Krantz interpreted; although it is claimed that some of the testimony given by plaintiff is not in accord with the facts,—that is, that it is disputed by some of the defendant's witnesses. Krantz interpreted the testimony of but two witnesses,

Dihpol and the plaintiff. It appears that defendant made no complaint of the testimony of Dihpol, as interpreted. It is not claimed that the testimony of plaintiff, as translated, was incorrect. The claim was that plaintiff made a mistake in pointing out Mr. Calvert, the mine foreman, instead of the timberman. Assuming the witness to have been mistaken in this respect, the fact is undisputed that it was the mistake of the witness, and not the mistake of the interpreter; be-cause, in the giving of such testimony, the witness did point out Calvert, and this was manifest to everybody.

Some claim is now made in regard to testimony bearing upon the extent of plaintiff's injury; but whatever there may be about this is claimed to have been discovered since the trial. An important consideration in this case is the fact that the testimony which the plaintiff himself gave in the original action was practically undisputed, and the really contested features of the case did not rest upon the facts tes-tified to by the plaintiff in the original case.

The defense in the original case was as to whether the defendant, at the time of plaintiff's injury, had complied with the provisions of the Workmen's Compensation Act. This appears in this record, and is shown by the opinion in the original case. It further appears that defendant had one Michelovich present in court as its interpreter, and that de-fendant had him there for the purpose of seeing whether the translation was correct or not; and he stated that the trans-lation by Krantz was substantially correct. It is true, of course, as suggested by appellant, that a case might arise where there would be a conflict between the interpreter selected by the court and the defendant's interpreter, and that this would add another fact for the jury to decide. But we need not pass that bridge now, because in this case there was no conflict, the defendant's interpreter conceding that Krantz had correctly translated the testimony.

Without further discussion of the evidence or law, and

without intending to relax the rule that an interpreter ought to be disinterested, it is our conclusion that, under the entire record, which we have read with care, there was no prejudice resulting to the defendant, and that the trial court did not err in overruling defendant's petition. The ruling is—*Affirmed.*

LADD, EVANS, and SALINGER, JJ., concur.