902 So.2d 550 (2005)
STATE of Louisiana
v.
Thang LAI.
No. 04-KA-1053.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*553 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Kia M. Habisreitinger, Martin A. Belanger, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, Louisiana, for Defendant/Appellant.
Thang Lai, Angola, Louisiana, in Proper Person.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Thang Lai, was convicted of one count of attempted second degree murder, a violation of LSA-R.S. 14:27; 14:30.1, one count of armed robbery, a violation of LSA-R.S. 14:64, and two counts of cruelty to a juvenile, violations of LSA-R.S. 14:93. After the denial of his motion for new trial, he was sentenced to 50 years of imprisonment on count one, 99 years of imprisonment on count two, 10 years imprisonment on count three, and 10 years imprisonment on count four with the Department of Corrections. The sentences were ordered to be served concurrent with each other. This timely appeal followed.

FACTS
In March of 2001, Muoi Ghi Le, her husband, and their four children lived in an apartment in Gretna. Mrs. Le, who spoke only Vietnamese, testified at trial through an interpreter. The children, three girls and one boy, were all under the age of ten.[1] T.L. was the eldest child, and based on her birth date, she was nine years old at the time of the incident. On March 22, 2001, Mrs. Le was at home with her children. The door to the apartment was partially opened, locked only with the security chain. Mrs. Le heard the chain being removed and turned to see the defendant, a man whom Mrs. Le knew as "Long" enter the apartment. Mrs. Le recognized the defendant right away, smiled at him, and was about to greet him. Mrs. Le became afraid, however, when a second man entered the apartment. Mrs. Le testified that the men were wearing hooded jackets and were attempting to cover their faces by holding the collars of the jackets with their teeth.
Each man was armed with a knife, and they placed the knives at her throat. They ordered Mrs. Le to kneel on the floor and demanded money. Mrs. Le gave the defendant her necklace. Defendant then bound her hands behind her back. He then bound the hands of all three of Mrs. Le's daughters and ordered them to their knees. The accomplice was in Mrs. Le's room, while defendant demanded money. Defendant told her to get him the money, *554 or else he would choke or stab her to death. T.L., who testified at trial without the need for the interpreter, explained that the accomplice had already found money in Mrs. Le's purse. Mrs. Le told him that she had no money, and defendant choked her around her neck. Defendant cut a piece of cloth from her shirt and put it in her mouth, as well as the mouths of the children. All of the children were crying. Mrs. Le testified that when her eleven-month-old son attempted to remove the cloth from her mouth, the defendant grabbed her son by his hand and slammed him into the door. Mrs. Le testified that the child was crying and his face was scratched.
Defendant turned to the children and told them that he would kill them if they did not tell him where the money was located. Mrs. Le testified that T.L. gave her piggy bank to defendant. T.L. testified that she also found an additional few dollars in Mrs. Le's purse. Mrs. Le testified that her second child, W.L. begged defendant not to kill them, and told defendant that Mrs. Le often kept money in a pillow. Defendant tried to open the pillow, but when he saw that there was no money, he punched the child, and then punched Mrs. Le.
Mrs. Le testified that the defendant then rolled a shirt up and wrapped it around her neck. Holding the shirt, defendant drug Mrs. Le into the bathroom. Defendant pulled on the shirt with both hands until she lost consciousness. After she came to, the accomplice entered the room and spoke to defendant in English. Defendant then cursed her and told her that he knew she had more money, and that she was going to tell him where it was located. Mrs. Le testified that defendant told her that she was going to watch him because he was going to put hot water on her children. Mrs. Le testified that defendant brought all of the children into the room. Mrs. Le begged him not to kill the children and told him that she would give him the money if she had anymore. Defendant put T.L. into the bathtub and placed her face up under the faucet. Then, defendant turned on the hot water. Mrs. Le saw the steam coming from the water as T.L. cried. Mrs. Le pleaded with defendant to leave her children alone and to kill her. Instead, defendant struck Mrs. Le and placed her into the tub of hot water. T.L. was standing on Mrs. Le's foot and crying. Defendant went out of the room, but returned. He cursed Mrs. Le again, and threatened to kill her if she did not give him the money. The accomplice entered and said he would kill them all if they did not have any money. Mrs. Le said that defendant choked her so hard that she could not breathe, and then she lost consciousness.
T.L. testified that she and her siblings thought their mother was dead. After a while, Mrs. Le awoke. When she came to, the children were surrounding her crying, begging her not to die. The family was eventually able to untie each other and escape from the bathroom. The robbers had barricaded the outside of the door with a playpen and/or a coffee table.
The police were called, and Detective Wayne Williams of the Gretna Police Department responded. He said that Mrs. Le was crying and was very upset. She still had duct tape wrapped around her wrist. Both Mrs. Le and T.L. were drenched, and the eleven-month-old had redness and swelling around his face. Mrs. Le gave a statement a few days later with the assistance of a Vietnamese interpreter who was a police officer. Detective Eric Stahl testified that the police investigation led to Duyen Nguyen's trailer on Peters Road. Ms. Nguyen testified through an interpreter at trial that defendant, *555 whom she also knew as "Long," lived with her and rented a room from her in the trailer. Mrs. Nguyen said that defendant's brother, whom she knew as "Tony," also stayed there. After Ms. Nguyen consented to a search of the trailer, the police seized a pair of slippers from the room where Ms. Nguyen allowed the pair to sleep. Mrs. Le identified the shoes as the ones worn by the defendant. The police also seized an identification card in the name of "Dihn Lai," whom Ms. Nguyen identified as "Tony" and a tax form bearing the name of "Long Nguyen."
Detective Stahl prepared a photographic lineup containing Dihn Lai's photograph was prepared and shown to Mrs. Le. She identified Dihn Lai as the person who had knocked on her door at some point in time before March 22, 2001. Detective testified that he prepared a second line-up of "Long Nguyen," with an alias of "Duc Le" using the information from the tax form. Detective Stahl testified that Mrs. Le said she knew this person but it was not the person who committed the crime. Detective Stahl discovered through further investigation that an individual by the name of Thang Lai had been in the company of Dihn Lai when he (Dihn) was stopped in the past. Thinking that the two might be brothers, Detective Stahl prepared a photographic lineup of the defendant, Thang Lai, and Mrs. Le immediately identified Lai as the person known to her as "Long." Mrs. Le also identified defendant in court as the person whom she knew as Long.
Mrs. Le testified that she had $1900.00 in her purse and that her necklace was a jade pendant. She testified that her neck still hurts, she has headaches and nightmares.

ANALYSIS
Defendant's counsel has filed a brief in which three allegations of error are presented, namely that the trial court failed to provide appellant with a neutral and impartial translator, that the trial court erred in denying his new trial motion premised upon the State's improper rebuttal argument, and that the trial court imposed an excessive sentence. Defendant has also filed a pro se brief with four allegations of error, in which he argues that the trial court erred in not ruling on an objection to the suggestive in-court identification of appellant, that the trial court imposed an excessive sentence, that the evidence was insufficient to support the verdict and that the Clerk of Court erroneously identified appellant in the record. In addition, defendant's counsel requests that this court review the record for errors patent.
In pro se allegation of error three, defendant contends that the evidence was legally insufficient because the State failed to prove his identity beyond a reasonable doubt. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992).
If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the trial court's error requires a reversal of the conviction or was harmless. State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 *556 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
The requirement of LSA-R.S. 15:438 regarding circumstantial evidence does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Peden, 04-71 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 940.
Here, defendant does not contest the existence of the statutory elements of the offenses. Rather, defendant contends the evidence was insufficient to establish his identity as the perpetrator.
The record in this case reflects that the State established defendant's identity beyond a reasonable doubt. Detective Stahl testified that as soon as Mrs. Le saw the photographic lineup containing Thang Lai's picture, she began to cry. She pointed out his photograph, which is in position number five, before anything was even said to her. Mrs. Le testified that she positively identified the person whom she knew as "Long" from the lineup. She testified that she was certain he was the individual who had intruded into her home. She also stated that no one suggested to her that she should choose defendant's photograph.
Mrs. Le also identified defendant in court as the man she knew as "Long." She became so emotional that the defendant moved for a recess. Mrs. Le repeatedly stated that she was certain of her identification of defendant. She explained that she recognized the defendant's face because he was not concealing his entire face.
Mrs. Le was the sole victim to make an identification of the defendant. However, the jury obviously believed that she was credible. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction. State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789. It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); Accord, State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. We find that, viewing the evidence in this case in the light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that the State proved the essential elements of the offenses.
In his first counseled allegation of error, defendant charges that the trial court failed to provide appellant with a neutral and impartial translator. He contends *557 that the trial judge erred in denying his motion for a mistrial made on the basis that the translator, Cong Tran, was being paid by the State and on the basis that Mr. Tran had assisted the prosecutor in communicating with witnesses before their testimony during a break. The State responds that the trial court properly denied the mistrial motion.
The record reflects that prior to trial, the defendant filed a motion for the trial court to appoint an interpreter, which was granted. However, at the beginning of trial, the defense attorney stated that the defendant did not need an interpreter. Rather, the defense attorney told the court that "[t]hey need him for the witnesses not for him." From the context of these remarks, it appears that the defense attorney was referring to the fact that the State needed the interpreter. After opening statements the interpreter, Cong Tran, arrived and was questioned under oath by the State and the defendant about his qualifications. Thereafter, the defendant joined the State in the stipulation that Mr. Tran was an expert in the field of interpreting the Vietnamese language, whereupon Mr. Tran took an oath to interpret the proceedings to the best of his understanding and knowledge. The trial court then accepted Mr. Tran as an expert interpreter. Mr. Tran interpreted for the State's witnesses Mrs. Le, Ms. Nguyen, and some portions of the testimony of Chai Nguyen, a person who testified that he was a friend of and lived in Ms. Nguyen's trailer at the time Long lived there.
Following Mrs. Le's testimony, the defense attorney asserted that she had just been informed that the State was paying for the interpreter and moved the court to order "Judicial" to pay for the interpreter to ensure that he was unbiased. The State asserted it had no objection, and the court took the matter under advisement. T.L. then testified, followed by Ms. Nguyen, and Mr. Chai Nguyen. After a break in Chai Nguyen's testimony, the defense attorney informed the court that she had been informed that the prosecutor had used the interpreter to talk to the witnesses in preparation for their testimony during the lunch break. The defendant moved for a mistrial on the basis that the interpreter was no longer neutral and impartial. The trial court denied the mistrial motion and also denied the motion for a new trial made on the same basis. In denying the new trial motion, the trial court pointed out that the interpreter was not used as a witness, and that the defendant could have used his own interpreter, but had apparently released the interpreter prior to trial.
LSA-C.Cr.P. art. 775 provides for the grounds of a mistrial when the conduct is not within the scope of Articles 770-771, which pertain to prejudicial remarks:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a *558 fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Smith, 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285.
Defendant cites State v. Tamez, 506 So.2d 531 (La.App. 1 Cir.1987) as support for the argument that the interpreter was not a neutral party. In that case, the defendant's guilty plea was vacated because the trial court permitted one co-defendant to translate the responses of the other co-defendant during the guilty plea colloquy. Id. at 533.
Defendant also cites State v. Lazarone, 130 La. 1, 57 So. 532 (1912), in which the Louisiana Supreme Court reversed the defendant's conviction because the interpreter appointed by the trial court was a witness for the prosecution who had contributed to a fund for the prosecution of the defendant. In reversing the conviction, the Court found that "the mind of a person who has contributed toward a fund for the prosecution of an accused" could not be "absolutely disinterested." Id. at 534.
In State v. Nguyen, 02-0410 (La.App. 3 Cir. 10/2/02), 827 So.2d 1248, 1252, the court rejected the defendant's contention that he was not afforded a neutral interpreter because the Vietnamese interpreter was a law enforcement officer. In that case, defendant spoke English, but wanted the interpreter to stand by for assistance. The court held that a law enforcement official was not per se biased when acting as an interpreter and that the opposing party bears the burden of proving that the interpreter is biased. Id. at 1252. The Nguyen court found that it need not resolve the issue of bias of the translator because error, if any, would be harmless. Although the interpreter was brought in during trial, the defendant spoke enough English that the interpreter was not needed. The court pointed out that there were no instances in this case where the interpreter utilized another language to interpret into English anything the defendant said. Nevertheless, the court recognized that a translator brought in on behalf of a party should be impartial. In Nguyen, because the defendant failed to make any allegation that the interpreter in the case mistranslated any portion of the testimony or was incompetent, the court found no merit in his assignment.
In this case, the interpreter was brought in by the State for the purposes of translating the State's witnesses' testimony. The interpreter in this case was not a party or a witness, as was the case in Lazarone, supra, and the interpreter was sworn by the court, contrary to Tamez, where the court-appointed interpreter was unsworn. Most importantly, however, defendant did not request assistance from the interpreter in any way whatsoever.
Furthermore, defendant has assigned no specific prejudice arising out of Mr. Tran's translations. There is nothing in the record to suggest that Mr. Tran improperly translated any of the testimony at trial. This Court has recognized that a conviction should not be reversed unless the accused's substantial rights have been violated. State v. Schexnayder, 96-98 (La. *559 App. 5 Cir. 11/26/96), 685 So.2d 357, 369, writ denied, 97-0067 (La.5/16/97), 693 So.2d 796, cert. denied, 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997). See also LSA-C.Cr.P. art. 921. Since the record does not reflect that any prejudice sustained by Mr. Tran's being paid by the State and aiding the prosecutor in communicating with the State's witnesses, defendant's substantial rights were not prejudiced. We find no abuse of discretion in the trial court's decision denying the mistrial motion.
In his second counseled allegation of error, defendant contends that the trial court erred in denying his motion for a new trial based on the trial court's overruling the defendant's objection to the State's rebuttal. The State responds that the prosecutor's argument in rebuttal answered the defense's closing argument regarding the likelihood of misidentification.
LSA-C.Cr.P. art. 851(2) provides as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
....
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]
The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Badeaux, 01-618 (La.App. 5 Cir. 11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
Closing arguments in criminal cases are restricted to evidence admitted to trial, to lack of evidence, to conclusions of fact that may be drawn therefrom and to the law applicable to the case. The argument may not appeal to prejudice. LSA-C.Cr.P. art. 774; State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 768.
A prosecutor retains "considerable latitude" when making closing arguments. State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 846; State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Furthermore, a conviction is not reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Snyder, 750 So.2d at 846. The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
In closing argument, the defense raised the likelihood of misidentification, commenting on the lack of fingerprint evidence and the fact that no physical evidence tied defendant to the scene. The defense attorney specifically commented on the questionable reliability of Ms. Le's identification, considering that she had endured a traumatic ordeal, had only met defendant briefly on two occasions before the incident, and because T.L. had testified she could not identify defendant.
In rebuttal, the prosecutor responded that although T.L. testified she had not *560 been able to identity defendant as the perpetrator because she was too afraid to look at the robbers' faces, T.L. testified that she saw that the individual that had tied them up had a gold "canine" tooth. The prosecutor continued, and reminded the jury that when the State had moved for the defendant to display his teeth, that the defense attorney had objected. At this point in the rebuttal, the defendant objected. After the trial judge overruled the objection, the prosecutor stated as follows that the defense attorney had objected to the defendant displaying his teeth:
She said, objection, Your Honor, objection. She didn't want him to come stand in front of you because that's going to hammer her client. She didn't want you to know the truth. She didn't want you too know that that man was the man in that house who the mother identified and the little girl confirmed gold tooth right here ...
After the closing arguments, the trial judge instructed the jury that the opening statements and the closing arguments of the attorneys were not to be considered as evidence. The judge also instructed the jury that the defendant was presumed innocent and was not required to call any witnesses or produce any evidence.
LSA-C.Cr.P. art. 770(3) provides that a mistrial shall be ordered when the prosecutor makes a remark or comment during the trial or in argument, within the hearing of the jury, that refers directly or indirectly to the failure of the defendant to testify in his own defense. Even without this statutory prohibition, a prosecutor is not free to comment upon a defendant's failure to take the stand, since such a comment violates the Self-Incrimination Clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment. See, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) and State v. Fullilove, 389 So.2d 1282, 1283-1284 (La.1980); See also, State v. Mitchell, 00-1339 (La.2/21/01), 779 So.2d 698, 701. This prohibition applies to both direct and indirect references to the defendant's failure to testify. Mitchell, at 701; State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 464, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
Where the reference is not direct, the reviewing court inquires into the remark's intended effect on the jury to distinguish indirect references to the defendant's failure to testify, which are impermissible, from general statements that the State's case is unrebutted, which are permissible. State v. Johnson, 541 So.2d 818, 822 (La.1989); State v. Pendelton, 783 So.2d at 464. An indirect reference requires a mistrial only if the comment was intended to draw the jury's attention to the failure to testify. State v. Pendelton. The test for determining the intent of such a statement is set forth in State v. Johnson, 541 So.2d at 822 (emphasis as found in the original):
In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, we have held that the prosecutor's argument did not constitute an indirect reference to the defendant's failure to take the stand....
On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, "a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify" and mandates a mistrial....
In Pendleton, however, this Court found that the prosecutor permissibly commented on the strength of the State's case:

*561 She was a little shaky. She was a little upset. She is a victim of a robbery. She had to come into a courtroom and testify. But she was clear in one critical regard: That that's the man that robbed me back on June 17th. No evidence presented to contradict that.
State v. Pendleton, 783 So.2d at 463.
In Pendleton, this Court noted that the defense theory was misidentification and that, as part of its burden of proof, the State was required to establish beyond a reasonable doubt that the defendant was the perpetrator of the offense. This Court found that the record supported the conclusion that the prosecutor's comment was a permissible general comment on the strength of the State's unrebutted evidence, that is the identification evidence, as opposed to an impermissible reference intended to draw the jury's attention to the defendant's failure to testify. Id. at 464.
The comment in this case was a permissible general comment on the strength of the State's unrebutted evidence because the prosecutor's remarks answered the defense's theory of misidentification. The prosecutor's remark was intended to emphasize the strength of the identification evidence, as opposed to a reference intended to draw the jury's attention to the defendant's failure to testify. We find no error in the trial court's decision overruling the objection or in denying the motion for a new trial that was based on the overruling of the defendant's objection.
In his first pro se assignment of error, defendant alleges that the trial court erred in not rendering a ruling on an objection made by defense counsel to the suggestive in-court identification of him made by Ms. Le. While defendant cites authorities that pertain to the standard for judging the admissibility of out-of-court identifications, e.g. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), defendant does not contest the trial judge's ruling denying his motion to suppress the identification prior to trial.
The record reflects that the prosecutor asked Mrs. Le whether she saw the individual whom she knew as "Long" in the courtroom. Thereafter, the defendant objected, stating, "Objection, Judge, the interpreter is telling her where to look." Mrs. Le immediately identified defendant as Long and began to cry. The prosecutor stated for the record that due to the manner in which Mrs. Le was positioned in the courtroom and the fact that she was a short person, Mrs. Le was unable to immediately see over the table. The prosecutor also said that the individual was very small, (apparently referring to the defendant), and that Mrs. Le had to stand up in order to see him. Because Mrs. Le was crying, the defense moved for a recess, but failed to obtain a ruling on the previously made objection.
In State v. Jackson, 00-0717 (La.App. 1 Cir. 2/16/01), 814 So.2d 6, 11, writ denied, 01-0673 (La.3/15/02), 811 So.2d 895, the court stated, in the context of the defendant's motion to reconsider sentence, that it was the defendant's responsibility to obtain a ruling on his motion. Because the trial court did not rule on the objection in this case, there does not appear to be any ruling for this Court to review in this assignment.
In his third counseled allegation of error and in his second pro se assignment of error, defendant contends that the trial court imposed an excessive sentence. However, because we find patent error that requires us to vacate the sentences and remand for resentencing, we pretermit discussion of these assignments of error.
In his fourth pro se assignment of error, defendant contends that the record should *562 be corrected because the transcript incorrectly refers to him as "Long Nguyen" when he invoked his right against self-incrimination. Defendant's position has merit. The transcript does indeed incorrectly refer to defendant "Long Nguyen" instead of as "Thang Lai" in the caption prior to invoking his right against self-incrimination. Due to the confusion of the similar names in the case, we remand the appellate record for the transcript to be corrected by the court reporter so that it refers to defendant as Thang Lai, instead of "Long Nguyen."
Finally, in defendant's fourth counseled allegation of error he requests that we review the record for errors patent. We have reviewed the record in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which merit our attention.
A reading of the record reflects that the sentences are indeterminate. Regarding counts one through three, the trial judge failed to state that these sentences would be served at hard labor. Also, the commitment, while it reflects the term of the sentences, and that each is to be served concurrently, does not state that any of the sentences were to be served at hard labor. In a separate paragraph, the commitment states that defendant was sentenced to imprisonment at hard labor for a term of 99 years. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
LSA-C.Cr.P. art. 879 requires the trial court to impose a determinate sentence. If a sentence is indeterminate in violation of LSA-C.Cr.P. art. 879, it should be remanded for the trial judge to clarify the sentence on resentencing. State v. Lachney, 621 So.2d at 846 (La.App. 5 Cir. 1993).
Recently, this Court remanded for resentencing under similar circumstances in State v. Glenn, 04-526 (La.App. 5 Cir.3/1/05), 900 So.2d 26, 37. The defendant was convicted of second degree murder and was subject to a mandatory sentence of life imprisonment without benefits. The Glenn court noted the following in the patent error discussion:
During sentencing, the trial judge stated that "[t]he statute under which the defendant was convicted provides for only one sentence and that is the sentence that the Court will impose; that is, the defendant will be sentenced to life in prison without the benefit of probation, parole or suspension of sentence." The Commitment, however, provides that the court sentenced defendant to imprisonment at hard labor for life. The Commitment further provides that the defendant is committed to the Louisiana Department of Corrections for execution of his sentence in conformity with LSA-R.S. 15:824. There is a mandatory sentence for second degree murder, and the trial judge specifically states the sentence he is imposing is the one provided for in the statute. However, the transcript reveals "at hard labor" was omitted in the sentence the trial judge imposed.
If a discrepancy exists between the minutes and the transcript, the transcript prevails ... Accordingly, we remand this case to the trial court for resentencing consistent with this opinion. In other respects, defendant's conviction is affirmed.
Id. at 37, footnote omitted.
As in Glenn, we remand this matter for the trial court for resentencing consistent with this opinion.

*563 CONCLUSION

For the above discussed reasons, this matter is remanded for resentencing consistent with this opinion. The record is remanded for correction by the court reporter. In all other respects, defendant's convictions are affirmed.
CONVICTION AFFIRMED, SENTENCE REMANDED.
NOTES
[1] In accordance with LSA-R.S. 46:1844(W)(1)(a), the initials of the minor children are used to protect their identities since they were minors under the age of eighteen.