635 So.2d 391 (1994)
STATE of Louisiana
v.
Jorge RODRIGUEZ.
No. 93-KA-0461.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
*393 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of Louisiana.
Robert T. Myers, Young, Richaud, Theard & Myers, New Orleans, for defendant-appellant Jorge Rodriguez.
Before BARRY, KLEES and WARD, JJ.
KLEES, Judge.
On January 28, 1982 the appellant, Jorge Rodriguez was charged by bill of indictment with the second degree murder of Alberto Gonzales. He was tried by a jury on June 30, 1982 and found guilty as charged. On August 17, 1982 he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The conviction and sentence were affirmed in an errors patent appeal. State v. Jorge Rodriguez, KA-0844, unpub. (La.App. 4th Cir., November 14, 1983).
Following the denial of several applications for post conviction relief, at 92-K-1301 this court ordered the trial court to grant the appellant an out-of-time appeal, pursuant to the holding in Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990). The appeal was granted on August 3, 1992.

FACTS
Maria Gonzales and her husband, Alberto, were acquainted with the defendant because he used to live with Alberto's cousin, Dolores Soto. On December 29, 1991, at about 3:30 p.m., Maria was watching television in the bedroom of her shotgun house at 2470 Verbena Street when the doorbell rang. Alberto answered the doorbell. Maria heard the defendant cursing and heard Alberto tell the defendant to respect his house. Alberto told the defendant if he had a problem to settle it outside. Maria then heard a shot. She went to the hall and saw the defendant, who shot her in the hand and ran out. Maria also saw another man in the hall. She only saw the other man from the back as he was going towards the door. She described him as short with short black hair.
After Maria was shot, she ran back to the bedroom because she was afraid they would come back and kill her. She then hid in a shelter in the backyard. Eventually she went back to the house and asked her neighbor to call the police.
Officer Norman McCord was called to the scene around 4:00 p.m. and found Alberto lying dead, face down in the hall, having been shot in the back of the head, and found Maria bleeding from the hand. Maria told McCord what had happened. He then called the crime lab and left to find the defendant. Three revolvers and $18,000.00 were found in the victim's home. The victim did not work, but received checks in connection with an accident and back injury.
McCord with Officer Paul Mattio found the defendant at his apartment on Chef Menteur Drive. Also at the apartment were Raphielle Rosales, known as "Peaches," and a third person. When the officers found out which one was the defendant, they handcuffed and arrested him for the murder of Alberto Gonzales. They checked the cushion of a chair, so that the defendant could sit down, and found a 380 caliber Beretta automatic weapon under the seat cushion. The defendant was taken into custody and the others were taken in for investigation. Rosales was subsequently arrested, although it is not apparent what became of that charge. Over two weeks later, on January 16, 1991, Mr. Frank Culotta called the N.O.P.D. relative to a weapon found in the defendant's apartment. Mr. Culotta lived in the apartment below the *394 defendant. He observed a leak coming from his ceiling and went upstairs to find its source. He found the door had been kicked in and the apartment in disarray. Culotta called the police to report it and was told that the incident had already been checked out. He then called the maintenance man to go back upstairs with him. They found that the leak was coming from the roof. They then took a bag of garbage out of the garbage pail so that the pail could be used to catch the water leaking from the roof. In the bottom of the pail underneath the bag they found a .38 caliber Taurus revolver. The weapon found in the apartment that date was determined from ballistics tests to be the murder weapon.
Radeem Machado, the murder victim's brother, testified that he recognized the Taurus as belonging to the defendant. Machado testified that the defendant carried it with him all the time. He further testified that he saw the defendant and "Peaches" on the day of the murder. They asked him to go with them to Alberto's house, but he refused. Machado identified the murder weapon as the one he saw next to the defendant in the car on the day of the murder. He also identified the Beretta automatic as Peaches's gun.
Odalis and Miguel Abraham, sister and brother-in-law of Alberto, testified that the defendant and Peaches came to their house two nights before the murder. Odalis testified that her husband opened the door and the defendant and Peaches came into the kitchen. Miguel told the defendant he did not want Peaches in his apartment. Odalis further testified that the defendant came into the bedroom where she was. She identified the murder weapon as the one that the defendant had tucked in the back of his pants that night, and the long gun as the one which Peaches had in the kitchen.
The victim's family all testified as to not wanting to associate with Peaches. They further testified to a rumor relative to a threat on Maria's life from Peaches's father. The particulars of the alleged phone call varied from witness to witness. However, the witnesses all denied that it affected their testimony.
The defendant testified that, on the day of the murder, Raphielle insisted that he drive him to Alberto's house to collect some money. The defendant noticed that Raphielle had a gun in his vest, but did not know he would use it. The defendant denied ever carrying or owning a gun. The defendant further testified that he went in and told Alberto that Raphielle needed to speak with him. Raphielle then went into the next room with Alberto, while the defendant waited in the front room. According to the defendant, he heard a shot and started for the door. He then heard another shot and a woman screaming. He ran three blocks and caught a bus to his apartment. The defendant testified that he could not call the police because he did not speak English. Raphielle arrived a short time later and threatened him with a gun. Angela Perdoma arrived shortly after that. The defendant further testified that he was relieved when the police arrived because he thought Peaches was going to kill him next because he was a witness to the other shooting.

PATENT ERROR REVIEW
A review of the record for patent errors reveals that there were none.

ASSIGNMENT ONE
The appellant avers that trial court counsel was ineffective. This assignment is assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686-88, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been *395 different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). However, in the interest of judicial economy, the court may consider a claim of ineffective assistance if the record contains sufficient evidence to address the merits of such claim.
The appellant avers that trial counsel was ineffective for his failure to timely investigate the crime scene. Specifically, he avers that it was six months before counsel sent his investigator to the victim's home, and that had he investigated sooner he would have found drugs, large sums of money and weapons, evidence of a drug deal between the victim and Raphielle Rosales. In fact, the police found weapons and a large sum of money, but denied knowledge of finding drugs in the victim's home. In addition, the fact that the witnesses wanted nothing to do with Rosales suggested that he was involved in some kind of illegal activity, or was an otherwise unsavory character. However, this evidence did not influence the jury that Rosales was the one who shot the victim. Had drugs also been found in the victim's home, it is unlikely that it would have affected the verdict. This claim has no merit.
The appellant also avers that counsel was ineffective for his failure to locate witnesses for his defense. Specifically, he avers that Acquiles Quintana, a cousin of the victim, and Acquiles's mother and stepfather, could have testified to impeach the testimony of the victim's widow. In a post-conviction application following his first appeal, this appellant claimed new evidence and furnished a letter purportedly signed by Quintana, which stated that Maria told the family that it was Rosales who was arguing with her husband and who shot her in the hand; however, because Rosales had threatened the family, they should pin the murder on the defendant. The testimony of Acquiles Quintana or others relative to the alleged prior inconsistent statement of Maria would have been inadmissible hearsay.[1] Even were the alleged statement admissible to impeach the credibility of Maria Gonzales or show bias, it would have had no effect, as the alleged threatening phone call and dangerous character of Raphael Rosales was put before the jury by several witnesses. In writ K-6896 dated January 22, 1987, this court reviewed the record and the written statement of the newly found witness and concluded that the new evidence, even if accepted as true, would not have changed the verdict. Accordingly, the failure of counsel to find and call these witnesses did not prejudice the defendant.
The appeal record is insufficient to review the appellant's claims relative to the adequacies of counsel's pre-trial visits, counsel's failure to hire independent ballistics and fingerprint experts, his failure to move for a continuance due to the non-appearance of Raphael Rosales as a witness, and his inability to communicate with the defendant in Spanish. These claims may be raised by an application for post-conviction relief.
The assignment relative to ineffective assistance of counsel is without merit.

ASSIGNMENT TWO
The appellant argues that he was denied due process and equal protection under *396 the law because the court-appointed interpreter was ineffective in her translation and because she failed to adequately communicate the defendant's emotions and passions. The minute entry from June 30, 1982, the first day of trial, states, "Interpreter Gloria A. Requena was stipulated to by both State and Defense and recognized by the Court as a qualified interpreter in the Spanish Language." The transcript indicates that the Court cautioned each witness to speak loudly and clearly for the benefit of the interpreter. The example given by the appellant does not show that the translation was inaccurate. Accordingly, this assignment is found to be without merit.

ASSIGNMENT THREE
The appellant avers that he was denied due process and equal protection under the law when he was denied an opportunity to be tried by a jury with some Latin or Spanish speaking members. Purposeful racial discrimination in selection of the jury venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. Batson v. Kentucky, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986); Strauder v. West Virginia, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1879).
An objection to the general venire or the petit jury venire should be urged by a motion to quash prior to trial, otherwise the objection is waived. Official Revision Comment (c)(2) to La.C.Cr.P. art. 535. The failure to file such a motion constitutes waiver of the objection. State v. Durr, 343 So.2d 1004 (La.1977). No motion to quash was filed in the instant case. In any event, the appellant has failed to make even a prima facie case that Hispanics were excluded from the jury venire. This assignment has no merit.

ASSIGNMENT FOUR
The appellant avers that the evidence against him was circumstantial and insufficient to support a verdict of guilty of second degree murder. As noted by this court in 89-K-1678, on September 28, 1989, "The issue of the sufficiency of the evidence was reviewed in the [appellant's prior] appeal. The appropriate standard for review when the evidence is circumstantial was used and the evidence was found to be sufficient." The claim is repetitious and has no merit.

ASSIGNMENT FIVE
The appellant avers that the trial court gave jury instructions which were later held to be unconstitutional. He complains that an incorrect charge was given as to both the law of principals and the reasonable doubt standard. A claim that a jury charge was improper will not be considered on appeal if no contemporaneous objection was made. La.C.Cr.P. art. 841. State v. Berniard, 625 So.2d 217 (La.App. 4th Cir.1993) on rehearing; State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ den., 588 So.2d 1110 (La.1991). Certification from the court reporter in this case indicates that there were no objections to the jury instructions. This assignment thus cannot be reviewed.

ASSIGNMENT SIX
The appellant avers that he has discovered new evidence which would have affected the verdict. As discussed previously, this claim was considered by this court in an application for post-conviction relief and property denied. It will not be reconsidered.

ASSIGNMENT SEVEN
The appellant avers that he has been denied due process because the appellate record is incomplete. A review of the record indicates that the record has been supplemented with the trial transcript. As to voir dire, opening and closing statements and jury instructions, the certification from the court reporter indicates that there were no objections raised. Accordingly, those transcripts were not transcribed as the issues would not be reviewable on appeal. The appellant further avers that the following additional documents are missing from the record: the subpoena and subpoena return for Raphielle Rosales, the brief filed by counsel in the appellant's original appeal, and the application and trial court disposition of the post-conviction application for which this court granted the relator this out-of-time appeal. *397 Because no motion to continue was made for the non-appearance of Raphielle Rosales, the issuance and return of the subpoena is irrelevant to this appeal. Similarly, where the appellant has here been given an out-of-time appeal, the patent error brief of appellate counsel in the original appeal and the application and trial court disposition requesting the out-of-time appeal are not essential to a review of the claims raised herein. The appellant has thus not been prejudiced by the omission of these documents from the record. This assignment has no merit.
Accordingly, for the above reasons the conviction and sentence of appellant Jorge Rodriguez are hereby affirmed.
AFFIRMED.
NOTES
[1] The Louisiana Code of Evidence was adopted in 1989 and was thus not in effect on the date of the appellant's trial. La.C.E. Art. 801(D)(1)(a) provides that a prior inconsistent statement by a witness is non-hearsay if it was given under oath subject to the penalty of perjury at the accused's preliminary examination or the accused's prior trial and the witness was subject to cross-examination by the accused. (Emphasis added.) This subparagraph creates a "limited variation" from the former Louisiana rule that assertive use of a witness' prior inconsistent statement is subject to a hearsay objection. Although admissible to attack credibility, a witness's prior inconsistent statement (even one given under oath in a judicial proceeding) is subject to the ban against the admission of hearsay for its substantive value, which is equally applicable to the Code of Evidence and prior law. See La.C.E. Art. 801, Author's Note 3.