973 So.2d 115 (2007)
STATE of Louisiana
v.
Genaro B. GONZALEZ.
No. 2007-KA-0532.
Court of Appeal of Louisiana, Fourth Circuit.
November 28, 2007.
Eddie J. Jordan, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, and Judge MAX N. TOBIAS, JR.)
MAX N. TOBIAS, JR., Judge.
The defendant/appellant, Genaro B. Gonzalez ("Gonzalez"), was charged on 18 May 2005 with one count of attempted second-degree murder. He entered a not guilty plea on 24 May 2005. On 22 July 2005, Thomas "Tommy" Williams appeared as an interpreter for Gonzalez, and a preliminary hearing was conducted. The court rendered its ruling on 28 July 2005, finding probable cause. Following a jury trial on 8 November 2006, Gonzalez was found guilty as charged. He was sentenced on 20 November 2006 to serve forty years at hard labor without benefit of parole and without benefit of good time eligibility. A motion to reconsider sentence was denied; a motion for appeal was granted.
The victim, Camille Tarver ("Tarver"), received three stab wounds, one of which was described as life threatening. The life threatening wound was just below her breast bone and was so large that her liver and stomach could be seen at the base of *116 the wound. The other wounds were on her hand and thigh.
Todd Belott, M.D.,[1] who performed surgery on Tarver, testified that substantial force is required to penetrate all of the layers of the abdomen. Here, in addition to all of the layers being penetrated, the knife also penetrated the back wall of her stomach and injured her pancreas and liver. A major artery was severed, and Dr. Belott opined that Tarver probably would have died from hemorrhaging had she not been taken timely to the hospital. He additionally felt that the large size of the wound was caused by repeated stabbing in the area.
Tarver testified that she and Gonzalez dated for a few months and that she broke up with him in the early part of December 2004. In January 2005, she was working two separate jobs. On 9 January 2005, Ms. Tarver was waiting for the streetcar after leaving her job at Money Mart on Canal Street in New Orleans when Gonzalez approached her to talk. He upset her, and when the streetcar came, she just turned around and boarded the Canal Street streetcar, leaving him behind. She was heading to her second job at Haagen-Dazs in the French Quarter where her shift began at 8:00 p.m. and ended at 12:00 a.m, She boarded the Canal Street streetcar to head home, and she exited the streetcar at Jefferson Davis Parkway. Tarver was walking along her usual route to her home that was located on Orleans Avenue when Gonzalez jumped from behind some bushes and attacked her. She was thrown to the ground with him on top of her. Tarver stated that the defendant appeared very angry. Initially, she thought that he was going to rape her and then she saw the knife. He stabbed her. She believed that he was trying to kill her. Tarver was able to push him and the knife away from her, and she ran into the street screaming. She could see that she was covered in blood. A car stopped, and Tarver jumped into the car and told the male driving that the defendant had just stabbed her. The man took her to Lindy Boggs Hospital where she was attended to by Dr. Belott. Prior to her surgery, she spoke to a police officer, giving the officer Gonzalez's name and address. Tarver also informed the officer that Gonzalez had family in New York.[2]
Sergeant Christian Hart of the New Orleans Polite Department went to the address given by Tarver and verified through the landlord that Gonzalez lived at that address. He was not at home at the time; hence, the sergeant secured a search warrant that was executed on 11 January 2005. Upon entering the apartment, the sergeant observed that the apartment looked as if no one lived there. He found only debris and some paperwork. Among the paperwork was Gonzalez's Honduran passport, social seourity card, and resident alien card. The sergeant did not find a knife or the towel that he allegedly wore around his neck during the attack. After seizing the identifications, Sergeant Hart obtained a warrant for Gonzalez's arrest and issued a bulletin regarding the warrant to all other law enforcement agencies.
Both the search and arrest warrants were admitted into evidence along with two pictures of Tarver's injuries taken after her surgery.
ERRORS PATENT/ASSIGNMENT OF ERROR NUMBER TWO
A review of the record reveals one errors patent. Neither La. R.S. 14:30.1 *117 nor La. R.S. 14:27 provide for a restriction of the right to earn good time. Thus, Gonzalez's sentence must be amended to delete any restriction as to good time.
ASSIGNMENT OF ERROR NUMBER 1
By this assignment of error, Gonzalez asserts that the district court erred in permitting him to go to trial without the assistance of a qualified language interpreter.
La. C.E. art 604 provides: "An interpreter is subject to the provisions of this Code relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation."[3]
In State v. Rodriquez, 93-0461 (La.App. 4 Cir. 3/29/94), 635 So.2d 391, this court found that an interpreter, whose competence was stipulated to and who translated with general accuracy, was sufficient to show that the interpreter was qualified. Here, Gonzalez complains, inter alia, that the record is devoid of any evidence of Mr. Williams' qualifications as an interpreter or a stipulation to that effect.
As indicated above, Mr. Williams first appeared as the defendant's interpreter at the preliminary hearing conducted on 22 July 2005, Seemingly, his qualifications would have been reviewed at that time. However, whether this was done is unknown because the transcript from the hearing is not part of the record on appeal. The minute entry from that day does not show that his qualifications were addressed, nor does it reflect an objection regarding his qualifications. In fact, the record does not reflect that any objection was lodged until Gonzalez pro se noted his concerns on the morning of trial.
Prior to the start of trial, Gonzalez produced a note written in English by someone from the prison in which he stated that he felt that his interpreter was not providing him "with specifics of information relayed by state attorney or judge." He stated further that he was not prepared to go to trial because his attorney had not attempted to bring forth his alibi witness, taken any statements from him, or provided him with any medical reports.[4] Gonzalez requested appointment of a bilingual attorney. The request was denied.
Besides the general assertion made by Gonzalez that Mr. Williams was unqualified as an interpreter, the main thrust of his complaint when read in context is that he, Gonzalez, observed Mr. Williams speak to a police officer. The court resolved this matter by questioning Mr. Williams. Mr. Williams denied being derelict in his duty to the defendant, and he noted that any conversation that he may have had with a police officer was strictly on a friendly basis and did not deal with the case.
Aside from this one alleged instance of prejudice that does not involve Mr. *118 Williams' ability to translate, Gonzalez does not point to any specific instances in which Mr. Williams' translation was inept during trial or otherwise or that an objection was lodged; the record on appeal fails to show that any problems arose during the translations. It is well-established that an irregularity or error cannot be argued after a verdict unless there was an objection at the time it occurred. La. C.Cr.P. art. 841. Because Gonzalez has not assigned any specific prejudice arising out of Mr. Williams' translations, he has not shown that his substantial rights were. violated. We find no abuse of discretion or error in the rulings on the trial court relating to the translator or the translations. Accordingly, the assignment of error is without merit.
Accordingly, we affirm the conviction, amend the sentence to delete any restriction as to good time credit, and affirm the sentence as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.
MURRAY, J., concurs in the result.
NOTES
[1] The parties stipulated that Dr. Belott was an expert in general surgery.
[2] Gonzalez was arrested in New York. Because the officer involved in the arrest did not testify, this information was not presented to the jury.
[3] Counsel for Gonzalez refers to federal statutes and rules in her effort to show that Mr. Williams was unqualified as an interpreter. The statutes and rules used by the federal courts to which she refers include 28.U.S.C. §§ 1827-28 and Fed.R.Evid. 604 that require an interpreter to either be certified or qualified as an expert. Reference to these statutes is unnecessary in light of La. C.E. art. 604. The official comment notes to La. C.E. art. 604 states that the, Article follows Fed.R.Evid. 604 and is intended to clarify Louisiana Law. Both parties refer to a case that predates La. C.E. art. 604 that became effective on 1 January 1989, in which the court declared that Louisiana had yet to determine the necessary qualifications for interpreters. See State v. Tamez, 506 So.2d 531 (La.App. 1 Cir.1987).
[4] The trial court addressed Gonzalez about his concerns, including a medical report about him. Apparently, he thought that a DNA test had been performed; however, neither the state nor the defense was aware of any such test being performed on Gonzalez.