827 So.2d 1248 (2002)
STATE of Louisiana
v.
Tri Chanh Van NGUYEN.
No. 02-0410.
Court of Appeal of Louisiana, Third Circuit.
October 2, 2002.
*1249 Michael Harson, District Attorney, 15th JDC, Lafayette, Ted L. Ayo, Asst. District Attorney, 15th JDC, Abbeville, for State of Louisiana.
Carey J. Ellis III, La. Appellate Project, Rayville, Patricia A. Thomas, Abbeville, for Tri Chanh Van Nguyen.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MARC T. AMY, Judges.
SAUNDERS, Judge.
Tri Chanh Van Nguyen, the Defendant in this case, was indicted by a Vermilion Parish grand jury on a charge of second degree murder. He pled not guilty and was convicted of manslaughter after a bench trial held November 15 through 17, 2000. On March 26, 2001, a hearing was held on the Defendant's motions for new trial and relief was denied. Subsequent to these rulings, the Defendant waived the sentencing delays and was sentenced to seven years at hard labor.

FACTS AND PROCEDURAL BACKGROUND
This case involves the shooting of Anthony Piersak at the Sau Dem Lounge in the early morning hours of October 22, 1998. The autopsy report introduced in evidence at trial indicated that the victim's cause of death was a single gunshot wound to the head.
Defendant was sentenced by the trial court to seven years at hard labor. He has appealed his conviction to this court. Due to an error patent, this court remanded the case for a hearing in an unpublished opinion dated February 6, 2002. Pursuant to this court's order, the lower court conducted a hearing and determined that Defendant knowingly and intelligently waived his right to a jury trial. Defendant's appeal is again before this court, relying on the arguments in his original brief.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
The Defendant originally asserted the following assignments of error:
(1) The State failed to present sufficient evidence to support the verdict, a conviction of manslaughter.
(2) The Defendant was not informed of nor did he knowingly and intelligently waive his constitutional right to jury trial.
(3) Defendant was not afforded a neutral and impartial interpreter in portions of his trial.
(4) Other crimes evidence and hearsay co-conspirator statements were erroneously allowed in this proceeding.
One of the Defendant's original assignments, Assignment of Error No. 1, was resolved in the earlier appeal, and Defendant has explicitly abandoned his earlier assignment involving the waiver of jury issue, Assignment of Error No. 2. Therefore, the current appeal addresses two assignments of error only, numbers 3 and 4.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. In the original appeal, one error patent was found. The record did not show that Defendant had knowingly and intelligently *1250 waived his right to a jury trial. For that reason, the case was remanded; after a hearing on the issue, the trial court concluded that Defendant had knowingly and intelligently waived his right to a jury trial. Thus, the potential error has been resolved.

ASSIGNMENT OF ERROR NO. 3:
In his third assignment of error, the Defendant argues he was not afforded a neutral and impartial interpreter in portions of his trial. He asserts that one of the Vietnamese-language interpreters used at trial was not neutral, because the interpreter was a state trooper. Trooper Lam Huynh is the interpreter at issue. The court recognizes that Trooper Lam Huynh was the interpreter for only the second and third days of trial, and another individual translated on the first day. The other interpreter is not at issue in this appeal.
The relevant colloquy with Trooper Lam Huynh is as follows:

THE INTERPRETER: (Interprets continuously for Mr. Try [sic] Nguyen throughout the entire trial).

OFFICER S. BROUSSARD: (Enters the courtroom.)

MS. THOMAS: Your Honor, may I have the interpreter's name and his occupation?

THE COURT: Yes. Give the Court your full name.

BY THE INTERPRETER: Lam, L-a-m, last name's Huynh, H-u-y-n-h.

MS. THOMAS: And your occupation besides an interpreter?

BY THE INTERPRETER: I'm a trooper. I'm with the Louisiana State Police.

MS. THOMAS: Your Honor, I really must enter my objection to a person who is so strongly affiliated with law enforcement being an interpreter in this case.

THE COURT: Well, your objection's noted. But I've spoken extensively with Trooper Lam [sic], and I am satisfied that he will fairly and honestly interpret today.
And I'm also satisfied that he has the level of skill necessary to properly interpret for us today.

MS. THOMAS: Just note my exception.
The State argues this assignment is essentially moot, because Defendant admitted he spoke good English and elected to testify in English, although he apparently wanted the interpreter to stand by. The pertinent colloquy regarding the Defendant's election to testify in English follows:

MS. THOMAS: Yes, Your Honor. My first witness will be Tri Nguyen the defendant.

THE COURT: Okay.

MS. THOMAS: And Your Honor, Mr. Nguyen and I have discussed this, and he feels that his English is good enough for him to by and large testify without the help of the interpreter.
But he feels that there may be times

THE COURT: Okay.

MS. THOMAS:when he would need, and he will ask

MR. TRI NGUYEN: And one more thing?

THE COURT: Yes.

MR. TRI NGUYEN: I don't mean to disrespect nobody here, right here. But when I talk, can I use may hand to explain thing?

THE COURT: Yes, that's okay. Did you swear him?

DEPUTY COURTROOM CLERK: No, ma`am. I'm getting ready to tell him he can raise his right hand.
TRI NGUYEN,
a witness called on behalf of the defense was sworn in by the deputy courtroom *1251 clerk and was examined and testified on his oath as follows:

THE COURT: Okay, you can be seated. We're going to count on you to let us know when you need help.

THE WITNESS: Yes. If I don't understand, I'm going to say in English and let him know that I don't understand

THE COURT: All right, that's fine.

THE WITNESS:when he ask me question.
DIRECT EXAMINATION BY MS. THOMAS:
Q Mr. Nguyen, two things: You are testifying this morning, and we have discussed your testimony; is that correct?
A Yes, ma`am.
Q And you understand that you don't have to testify?
A Yes, ma`am.
Q And that you have a right to remain silent?
A Yes, ma`am.
Q Yes. You'll have to speak up because she's taking this all down and nods don't come through the machine.

THE COURT: And also we want to make sure that Mr. Ayo can hear you, so everybody can hear you, okay?

THE WITNESS: Yes, all right.
BY MS. THOMAS:
Q You kind of have to speak up. You're soft spoken, but speak up.
A Okay.
Q But you do understand all that?
A Yes. I understand all that.
During his testimony, Defendant stated his English had improved in jail, because he was able to take classes in the subject while incarcerated. This Court has read Defendant's recorded testimony and found only one instance in which the interpreter intervened in the proceeding. At one point, the court could not understand that Defendant had said the word "address." At this point, the interpreter told the court what word the Defendant stated. However, this was not an act of translation, but merely a repeat of the word the Defendant had already stated in English. Following the Defendant's testimony, the record contains the following notation:
(THE WITNESS WAS EXCUSED)

THE INTERPRETER: (Interprets continuously for Mr. Tri Nguyen throughout the entire trial).
The Defendant does not point any specific act of mistranslation and does not argue the interpreter was incompetent. On the Defendant's assertion that the translator was biased, he cites State v. Tamez, 506 So.2d 531 (La.App. 1 Cir.1987), for the proposition that an interpreter must be a "neutral and detached individual." Id. at 533. In Tamez, the court vacated the co-defendant's guilty plea because Tamez acted as the interpreter during the plea hearing. (The two defendants' appeals were consolidated). The court explained:
[I]t is axiomatic that an interpreter should be a neutral and detached individual whose abilities are first screened by the court and who is sworn to make a true, literal and complete bilateral translation. The use of an unqualified, unsworn interpreter who was the co-defendant with the accused and also has a substantial interest in the outcome of the proceedings, renders the plea itself questionable. In the instant case, the record contains no indication that a neutral interpreter could not be obtained. We find the court erred in permitting Tamez to translate the responses of his co-defendant, despite the fact that the suggestion to do so was made by counsel for Sanchez (who also represented Tamez). Id. at 533.
*1252 In Tamez, the first circuit failed to cite any jurisprudence; rather, it extrapolated from statutory law that authorizes interpreters for hearing-impaired defendants or jurors. This court believes that there is a dearth of case-law on the issue of foreign-language interpreters. Thus, State v. Lazarone, 130 La. 1, 57 So. 532 (La.1912), remains the main case on the issue. In reversing the Defendant's conviction, the court stated:
The next and last bill was to the act of the court in choosing as interpreter a person who had been summoned as a witness for the state, and had contributed to a fund for the prosecution of the accused.
This alone is sufficient to vitiate the verdict. The person chosen to interpret into English testimony given in a tongue not understood by jury, court, or counsel must be absolutely disinterested, unprejudiced, and unbiased; and the mind of a person who has contributed towards a fund for the prosecution of an accused can hardly be said to be in that condition.
Id. at 534.
Additionally, two more recent cases, State v. Sanders, 93-0001 (La.11/30/94); 648 So.2d 1272, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996) and State v. Rodriguez, 93-0461 (La.App. 4 Cir. 3/29/94); 635 So.2d 391, writ denied, 94-1161 (La.8/23/96); 678 So.2d 33, held on appeal that interpreters whose competence was stipulated to, and who translated with general accuracy, were satisfactory.
Although not explicitly stated, Defendant's argument implies that a law enforcement officer is per se biased or non-neutral in a criminal case. However, such reasoning has been rejected in the issue of jury-selection. See State v. Ballard, 98-2198 (La.10/19/99); 747 So.2d 1077(holding that status as active-duty police officer did not automatically show bias for purposes of selection as juror). Since a police officer may serve in the critical role of juror, there is no reason that an officer should not be equally eligible to serve as an interpreter. Therefore, we hold that a law enforcement official is not per se biased when acting as an interpreter and that the opposing party bears the burden of proving that the interpreter is biased.
This court need not resolve the issue of bias of the translator because error, if any, would be harmless. Although the interpreter was brought in during trial, the defendant spoke enough English that the interpreter was not needed. There are no instances in this case where the interpreter utilized another language to interpret anything the defendant said into English. However in general, this court recognizes that a translator brought in on behalf of a party should be impartial. Additionally, the Defendant has failed to make any allegation that the interpreter in the case sub judice mistranslated any portion of the testimony or was incompetent.
Since the Defendant has not argued another reason to disqualify Huynh as an interpreter, we conclude that this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4:
In his final original assignment of error, Defendant argues that the State introduced inadmissible "other crimes evidence" and hearsay. Defendant does not cite statutory law nor jurisprudence to support its argument.
At trial, Dung Cao, originally a co-defendant, testified for the State. The interpreter's assistance was required although the witness spoke some English. Shortly after taking the stand, Cao began to relate statements made by third parties approximately two days before the offense. Defendant objected on the basis of hearsay. Under the Louisiana Code of Evidence, *1253 hearsay includes any statement, other than one made by the declarant while testifying at the trial or hearing, that is offered in evidence to prove the truth of the matter asserted. La.Code Evid. art. 801(d). Accordingly, hearsay evidence is inadmissable, except as provided by the Louisiana Code of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. La.Code Evid. art. 802. However, a statement is not hearsay when it is offered against a party in certain circumstances. La.Code Evid. art. 801(D). The State then argued the statements would not be hearsay, pursuant to La.Code Evid. art. 801(D)(3)(b), which states:
(b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established.
The judge left the court room while counsel questioned the witness and interpreter to clarify the general cast of the testimony. At that point, the judge then returned and the State elicited testimony from Cao in its effort to make a prima facie showing of conspiracy. Cao testified that, prior to the offense, he heard a conversation among several people, who discussed wanting to "shut down" the Sau Dem Lounge, because it was interfering with another bar's business. He also testified that the Defendant was a participant in that conversation. After Defendant traversed on the issue of conspiracy, the court ruled that the State had adequately made a prima facie showing of conspiracy.
Although co-conspirators' statements can be used to help make a prima facie showing of conspiracy, they cannot be the sole evidence on the issue for hearsay purposes. State v. Myers, 545 So.2d 981 (La. 1989). Additionally, the testimony was potentially admissible as "res gestae," pursuant to La.Code Evid. art. 801(D)(4), however, it is unclear whether the remarks and events formed a sufficiently continuous transaction. See La.Code Evid. art 801(D)(4). This court need not resolve whether significant other evidence was introduced to show the existence of a conspiracy, or to show a continuous transaction since the error, if any, would be harmless.
Use of inadmissible hearsay is subject to the harmless error analysis. The standard for harmless error is whether the verdict was surely unattributable to the error. State v. Chapman, 96-152 (La. App. 3 Cir. 10/9/96); 683 So.2d 1236, writ denied, 97-0583 (La.9/5/97); 700 So.2d 505. It is the opinion of this court that the erroneous admission of the hearsay evidence was harmless, due to the strength of the State's case. Dung Cao's testimony was corroborated by substantial physical evidence. Thus, even though Cao was the only witness who saw Defendant in the act of shooting, the conviction rested upon solid evidence.
As the lower court explained:
As I mentioned earlier, insofar as the charge as brought by the State of second degree murder, I do not find that the element of specific intent is present in this case. And I find a total lack of evidence that this was an intentional killing.
However, I do find that the evidence has proven that there was certainly an illegal discharge of a firearm that resulted in the killing of a human being. It was a situation where this was not an intentional killing.
But it certainly was a killing within the definition of 14:31A, subpart (2), which defines it as "a homicide committed without any intent to cause death or great bodily harm. (a) When the offender is engaged in the perpetration or *1254 attempted perpetration of any felony not enumerated in Article 30 or 30.1, or any intentional misdemeanor directly affecting the person."
The next issue for the Court to determine was whether the State had proven beyond a reasonable doubt that Mr. Nguyen was in fact the individual that was responsible for intentionally discharging the firearm resulting in the death of Mr. Piersak.
I will tell you that in this case if the sole evidence presented by the State had been the testimony of Dung Cao the Court would not find that the State had met its burden of proof beyond a reasonable doubt.
As I said earlier, I think that both parties have a basis for wishing to blame the other in terms of responsibility for this act.
But I have carefully reviewed all of the evidence in this case and in particular the physical evidence in this case.
And after reviewing the physical evidence in this case, I find that that physical evidence fully corroborates Dung Cao's version of the incident as he relayed it.
I also find that the physical evidence directly contradicts any theory that the shots were fired over the shoulder of an individual sitting in the driver's seat of the vehicle involved in this case.
For that reason, I find that the State has proven beyond a reasonable doubt that Mr. Nguyen is guilty of the offense of manslaughter. And my verdict is in accordance therewith: guilty of manslaughter.
The trial court's reasoning also makes clear that the hearsay evidence did not play a role in the verdict. Defendant was convicted for unintentional homicide while illegally discharging a weapon. Thus, the evidence regarding an alleged conspiracy to shut down the bar does not appear to have played a part in the judge's verdict. Dung Cao's testimony did not indicate a specific plan to shoot anyone or anything at the bar. His direct testimony merely indicated a plan to shut down the bar, not a specific method of doing so. On cross-examination, the witness referred to plans to "clean up" or "breakup" the bar, meaning to destroy it, made on the night of the offense. However, these remarks were elicited by Defendant and were also nonspecific in nature.
The Defendant also objected to the evidence as improper "other crimes evidence," in violation of La.Code Evid. art. 404(B). However, in the context of a 404(B) analysis, this Court finds that the evidence would not refer to an "other" crime at all, but rather would refer to an integral part of the offense at issue. Apparently, the State's theory was that Defendant and some of his associates wanted to shut down the Sau Dem Lounge and that the shooting incident was related to their plan. However, even if the evidence was inadmissible evidence of other crimes, any error would be harmless for the reasons already discussed. See La.Code Crim.P. art. 921 (stating that a ruling shall not be reversed by an appellate court because of any error which does not affect substantial rights of the accused). The conspiracy theory does not appear to have affected the verdict. Therefore, as with the hearsay issue, the verdict was not attributable to the error.
For the reasons discussed, this assignment lacks merit.

DECREE
For the above reasons, the conviction of the Defendant is affirmed.
AFFIRMED.