NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 12-778

STATE OF LOUISIANA

VERSUS

JASON LAMOUNTE MORGAN

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22538-10
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

John Foster DeRosier
14th JDC District Attorney
Karen C. McLellan
14th JDC, Assistant District Attorney
Post Office Box 3206
Lake Charles, Louisiana 70602-3206
(337) 437-3400
COUNSEL FOR PLAINTIFF/APPELLEE:
       State of Louisiana

**Edward Kelly Bauman**
**La Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Jason Lamounte Morgan**

**Jason Lamounte Morgan**
**In Proper Person**
**Camp D Falcon 3**
**Louisiana State Prison**
**Angola, Louisiana 70712**

**CONERY, Judge.**

In this criminal matter, Defendant, Jason Lamounte Morgan, appeals his conviction of second degree murder for which he received a mandatory life sentence. Defendant argues there was insufficient evidence to convict him and the trial court erred in denying his motion to exclude the videotaped statement of a deceased witness. He further argues that he suffered prejudicial error when the State failed to produce a certain witness for trial, and the trial court erred when it refused to allow Defendant the opportunity to question the victim's son, an eyewitness to the murder, about drug-dealing activities. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 7, 2010, the victim, Roy Wyatt, became embroiled in an argument with Defendant's brother regarding ownership of a bicycle. Defendant, Jason Morgan, and the victim's son also became involved. The ensuing altercation was little more than a shoving match, but Defendant threatened to get a gun and left the scene. When he returned, he shot the victim, who was still outside his own gate.

Darren Morgan, Defendant's brother, lived with Duncan Barfield, next door to the victim. The victim and his family lived on Opelousas Street in Lake Charles, Calcasieu Parish, Louisiana. Martha Vital, who was a friend of both Duncan and the victim, testified that Duncan gave a bike frame to the victim, and she gave the victim tires for the bike. Martha testified there was an ongoing argument between Darren and the victim about the ownership of the bicycle in the weeks leading up to the shooting.

When Darren went to the victim's home to confront him about the bicycle, the two men argued. Defendant arrived at the scene of the argument in his El Camino, and, shortly thereafter, he and his brother engaged in a physical altercation with the victim and the victim's son, Jeremy Wyatt, in front of the victim's house. Three witnesses, Jeremy, Versa Batiste, and Consuella Batiste (stepdaughters of the victim),

testified that Defendant left after the fight ended, saying that he was going to get a gun. Martha Vital testified that Defendant "got up and he said, 'If that's how you want to do it, I'm-a show you how to do it.'" Consuella testified that Defendant was bigger than his brother, Darren, had two gold or silver teeth, and he had braids. She testified that Darren was short with short hair.

Consuella was outside on the porch of her house when Defendant returned. In the meantime, Jeremy had gone across the street to meet with Wayne Jones. Jeremy and Consuella Batiste testified they saw Jason Morgan, Defendant, coming around the side of the house, aiming his gun, and firing shots at Roy Wyatt. Roy Wyatt died as a result of a gunshot wound to his trunk that entered his back and exited his chest.

Varica Mitchell Coleman, Defendant's girlfriend, testified that she met Jason Morgan only four days before the shooting, although at trial she admitted to being in love with him. She knew Defendant's nickname of "Black," and she knew that he drove an El Camino. Varica testified that she was with Defendant before the fight with the Wyatts. He had picked her up from her home, and they were on their way to the store when Defendant was stopped by his brother, Darren Morgan, allegedly to help Darren fight Roy Wyatt and his son, Jeremy. Defendant pulled over and got out of the car while Varica remained in the car. Jeremy Wyatt and Martha Vital both testified that they saw an unknown female in Defendant's car when he arrived at the fight.

Varica witnessed the fight between the brothers and the Wyatts. When the fight was over, Defendant came back to the car and dropped her off at her home. Later, Defendant called Varica and asked her to pick him up from a house on Martha Street. When she arrived, Varica noted that Defendant's El Camino was parked in the garage of the Martha Street home. She picked up Defendant and his brother, Darren Morgan, and brought both men to her house. When she asked Defendant what happened, he

2

told her that he shot someone. Varica testified that while at her home, Defendant and his brother created the story that Darren, and not Defendant, shot the victim. Varica testified that Defendant told her that Darren would "take the charge." Varica told the men that they would have to leave her home, so she dropped them off at an apartment complex on Hodges Street in Lake Charles, Louisiana.

When the police arrived at the scene, no one knew Defendant's name. Duncan Barfield and Martha Vital could only identify him by his nickname, "Black." Lake Charles Police Department Detective Franklin Fondel spoke with Judge Wilford F. Carter who identified "Black" as Defendant, Jason Morgan, the brother of his handyman, Darren Morgan. Lake Charles Police Department Detective Kirt Farquhar testified that based on the unusual description of Defendant's car, he looked in the police database to find any vehicles that matched the description of the vehicle given by the witnesses. Detective Farquhar discovered that Defendant's El Camino vehicle matched the description of the witnesses.

Consuella Batiste failed to identify Defendant in a photo line-up. However, in open court both Consuella and Jeremy Wyatt positively identified Defendant as the shooter.

Approximately two hours after the shooting Darren called 911 and "confessed" to shooting the victim. However, at the hearing on Defendant's motion to cross-examine Jeremy about drug dealing activities, Darren refused to testify, exercising his Fifth Amendment right against self-incrimination.

According to the police report, Wayne Jones told police that he and Jeremy were smoking between the buildings at 1608 Opelousas Street when they heard shots but he did not see the actual shooting. Defendant subpoenaed Wayne for trial but could not locate him. Defendant asked for a continuance so that Wayne could be located. His request was denied.

The record shows that at the close of the final day of taking evidence, the State notified the court that "during one of the breaks" it had informed defense counsel that Wayne was incarcerated in Calcasieu Parish. Defendant's attorney was present but did not comment or object. At the hearing on the motion for new trial, Defendant's counsel acknowledged that he was informed of Wayne's whereabouts either before the last witness was called for the defense or before closing. At that same hearing, the prosecutor told the trial court that he had told Defendant's trial attorney of the location of Wayne "the day before he put on a single witness in this case."

Wayne testified at the hearing on the motion for new trial, presenting the testimony he would have given had he been brought to the trial on the merits. Wayne testified that after the fight, he and Jeremy Wyatt went behind his house to smoke marijuana. He stated that Jeremy was next to him while they were smoking, but then they finished. The joint dropped out of Wayne's hand, and he had just bent down to pick it up when the shots rang out. Wayne admitted that he was bent down on the ground, feeling in the grass in the dark, "so at that time, he [Jeremy] could've had a better view than [Wayne]." Wayne testified that Jeremy "could see what was going on" and that Jeremy had "an eye on his father."

On June 24, 2010, a Calcasieu Parish Grand Jury charged Defendant with second degree murder, a violation of La.R.S. 14:30.1, and obstruction of justice, a violation of La.R.S. 14:130.1. On April 15 and May 25, 2011, the trial court heard Defendant's motion to exclude the video statements of a deceased State witness and a motion to cross-examine another State witness.

Jury selection took place on September 19, 2011. The next day, the State dismissed the obstruction of justice charge, and the jury began hearing evidence on the murder charge; trial continued through September 22. On the latter date, the jury found Defendant guilty of second degree murder. On October 19, the trial court heard

4

and denied Defendant's motion for new trial. The trial court sentenced Defendant to the mandatory life sentence on October 21, 2011.

Defendant now appeals, assigning four errors.

## DISCUSSION

### *Sufficiency of Evidence*

In his first counsel-filed assignment of error, Defendant argues the evidence adduced against him at trial does not support his conviction. The analysis for such claims is settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant's argument is an effort to have this court reassess the credibility of various State witnesses. As noted in *Kennerson*, it is not the role of an appellate court to second guess a jury's credibility assessments. "This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way." *State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381 (citing *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol

before the offense, the other was a minor who believed all white men looked alike, and defendant was white).

Defendant raises several issues regarding the testimony of Jeremy Wyatt, Consuella Batiste, and Varica Coleman, but all of these issues are attacks on the credibility of the witnesses. None of the issues raised by Defendant demonstrate that Jeremy, Consuella, or Varica were unable to properly perceive the pertinent events at the time they occurred. Stated another way, there is no indication of sensory or mental impairment. The overall cast of Defendant's argument implies dishonesty on the part of the State's witnesses rather than impairment. Such an argument does not form a viable basis for a reassessment of witness credibility.

This assignment of error lacks merit.

### Videotape of Duncan Barfield

In his second assignment of error, Defendant argues the trial court erred in denying his motion to exclude the videotaped statement of deceased witness, Duncan Barfield.

Citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), Defendant argues that the trial court's denial of his motion seeking to exclude admission of the videotaped statement of Duncan, who was deceased at the time of trial, violated his Sixth Amendment right to cross-examine the prosecution's witnesses. At the hearing on the motion to exclude Duncan's videotaped statement, the parties agreed the videotaped statement would not be offered and narrowed the issue to whether the police officers would be able to testify to the fact that Duncan gave them information in the course of their investigation that led to them to consider Defendant as a suspect. The prosecution drafted a statement showing the line of questioning he planned to submit to the police. Defendant objected to a portion of the questioning regarding Duncan's current whereabouts, but the trial court ordered that the prosecution would

be allowed to proceed with the line of questioning. Officer Bendy Falcon of the Lake Charles Police Department testified at trial regarding the initial stage of the investigation and how the relevant information pertaining to the identification of "Black" as Defendant arose:

> Q    Did you -- did you ever speak to an individual by the name of Duncan Barfield?
>
> A    Correct.
>
> Q    All right. Through your conversation -- after your conversation with him, did you develop a suspect?
>
> A    Correct.
>
> Q    By the name of?
>
> A    "Black."
>
> Q    Okay. Do you know where Mr. Barfield is today?
>
> A    I've learned that he's passed, he's deceased.
>
> Q    Okay. So the suspect, you learned was "Black." What did you do with that information?
>
> A    Relayed it to dispatch to log in the computer, and it was later provided when the detectives arrived --
>
> Q    Okay.
>
> A    -- on scene.
>
> Q    You gave that -- that name of "Black" to the detectives when they arrived?
>
> A    Correct.

Additionally, during its closing argument, the prosecutor observed:

> You know, it's interesting, when the police got there and they said, "Did you come up with a suspect?" They said, "Yeah, we come up with a man by -- Duncan Barfield, we talked to him, and through that conversation, we come up with the name of "Black." And through that, you saw how they came and found out "Black" was Jason Morgan. There was nothing about Darren, who lived with him. The suspect the police found, after their discussions with Barfield, was "Black," okay? And that's when they went out and tried to gather out -- what the name

7

was and what vehicle he was driving, and somehow, through these computerized systems, they came up with that stuff.

Later, the prosecutor stated:

> What do we have showing that man as the shooter on that night: The identification by Jeremy Wyatt; the identification by Consuella Batiste; the testimony of Varica Coleman as to what he said and what he did after the shooting; the [sic] Duncan Barfield saying "Black" to the investigators when they began the investigation that occurred on that particular night; the physical evidence that's there on that particular night; the only person by three witnesses or four who said, "I'm going to get a gun and I'm coming back," which he did.

Defendant argues that the Officer Falcon's testimony about Duncan's identification of the shooter as "Black" is impermissible hearsay. He further argues that allowing this hearsay deprives him of his right to confront the witness testifying against him.

Hearsay includes any statement, other than one made by the declarant while testifying at the trial or hearing, that is offered in evidence to prove the truth of the matter asserted. La.Code Evid. art. 801(d). Hearsay evidence is inadmissible, except as provided by the Louisiana Code of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory authority, or by Act of Congress. La.Code Evid. art. 802. However, a statement is not hearsay when it is offered against a party in certain circumstances. La.Code Evid. art. 801(D).

The State argues that the testimony quoted above was not offered for the truth of the matter asserted, but rather to explain how the police developed their investigation and ultimately their case against Defendant.

In the context of *Crawford*, 541 U.S. 36, the Louisiana fifth circuit has explained, in *State v. Henry*, 08-658, pp. 11-13 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 944-45, *writ denied*, 09-2485 (La. 4/23/10), 34 So.3d 269 (footnotes omitted):

> On the second day of trial, before the first witness was called, the defense made an oral motion in limine. The defense alleged that the tip received by the police, about a black male named "Shadow" selling

drugs at the Quality Inn motel where he subsequently was arrested, was testimonial hearsay under *Crawford v. Washington* because it was being offered for the truth of the matter asserted. The State claimed that the information was *res gestae* and asserted that the information was being offered to explain the progress of the narcotics investigation and the reason that the police began their surveillance at the particular location and identified Henry as a suspect. The trial judge allowed the State to present the information for the purpose it asserted.

A law enforcement officer may testify about information provided by another individual without it constituting hearsay if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest. A law enforcement officer's testimony about statements made to him by other persons involved in the case in order to explain their actions are not hearsay. Instead, these statements often fall under the *res gestae* exception and are admissible, not to prove the truth of the statement being made, but rather to explain the sequence of events leading to the arrest of the defendant.

However, a law enforcement officer's testimony may not be used to introduce the content of an informant's tip because it violates the defendant's right to confront and cross-examine his accusers. In addition, an officer cannot testify that he acted on information obtained during the investigation as an indirect method of introducing the substance of out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule.

Even when hearsay evidence has been erroneously admitted, the verdict will not be reversed if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, determines that the error was harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to it. Confrontation errors are also subject to a harmless error analysis. A guilty verdict may also stand if the reviewing court determines that it is surely unattributable to the confrontation error. Factors to be considered in determining that the verdict was surely unattributable to the error include the importance of the evidence to the State's case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the State's case.

An earlier case by this court discussed the consequences of admission of inadmissible hearsay evidence:

The State argues that no hearsay violation occurred, because the information was not offered to prove the truth of the matter asserted. Rather, the argument goes, it was offered to provide background for and explain Detective Comeaux's investigative actions. We agree with defendant that this testimony was inadmissible hearsay. This court

9

recently visited a similar issue in *State v. Rubin,* 94–982 (La.App. 3 Cir. 2/8/95); 649 So.2d 1240, *writ denied,* 95–1135 (La.10/13/95); 661 So.2d 494. Detective Comeaux's testimony contained more information than was necessary to explain his investigation. It was offered more to bolster the victim's in-court testimony than to actually explain the course of the investigation.

> However, hearsay testimony is still subject to a harmless error analysis, i.e., whether the verdict was surely unattributable to the error. The error here was harmless. It merely restated evidence given by the victim, who had testified earlier and had been subject to intensive cross-examination. Furthermore, the jury viewed the pornographic videotape and made its own determination from the victim's in-court description of the videotape whether she had seen it. The assignment has no merit.

*State v. Chapman*, 96-152, p. 14 (La.App. 3 Cir. 10/9/96), 683 So.2d 1236, 1244, *writ denied,* 97-0583 (La. 9/5/97), 700 So.2d 505.

Similarly, in a case involving a shooting similar to the one before us, this court found:

> It is the opinion of this court that the erroneous admission of the hearsay evidence was harmless, due to the strength of the State's case. Dung Cao's testimony was corroborated by substantial physical evidence. Thus, even though Cao was the only witness who saw Defendant in the act of shooting, the conviction rested upon solid evidence.

*State v. Nguyen*, 02-0410 (La.App. 3 Cir. 10/2/02), 827 So.2d 1248, 1253.

In the instant case, the jury could logically have inferred from the testimony at issue that Duncan identified Defendant as the shooter. Further, the State's references to Duncan in its closing argument suggested reliance on the information for the truth of the matter asserted. The witness had never been cross-examined and could not be cross-examined. Nevertheless, even if the admission of the testimony at issue ran afoul of *Crawford*, any error was harmless. The State presented the testimony of two eyewitnesses, Jeremy Wyatt and Consuella Batiste, who both positively identified Defendant as the shooter. Another witness, Varica Coleman, stated that Defendant confessed to her that he was the shooter. Moreover, Judge Wilford Carter had already told the investigators that "Black" was Jason Morgan, the brother of his handyman,

10

Darren. Further, the investigators had received a description of a vehicle that they were able to match to an El Camino owned by Defendant. As in *Henry,* 27 So.3d 935, *Chapman,* 683 So.2d 1236, and *Nguyen*, 827 So.2d 1248, the State's case was not based upon the objectionable evidence, and the remainder of the State's case was sufficient to support the conviction. For the reasons discussed, this assignment lacks merit.

***Absence of Wayne Jones***

In his third assignment of error, Defendant argues that "[p]rejudicial error occurred when the [S]tate failed to produce Wayne Jones at trial." According to Jeremy Wyatt's testimony, Wayne was with him at the time of the shooting. Trial counsel subpoenaed Wayne, but he was not produced at trial. Defendant claims that his trial counsel filed a motion for new trial "when he discovered that Wayne Jones was incarcerated in the Calcasieu Parish Prison at the time of trial." However, the record shows that trial counsel obtained information about Wayne's location before trial was over.

The relevant article, La.Code Crim.P. art 854, states:

A motion for a new trial based on ground (3) of Article 851 [new evidence is available that "would probably have changed the verdict"] shall contain allegations of fact, sworn to by the defendant or his counsel, showing:

(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;

(2)The names of the witnesses who will testify and a concise statement of the newly discovered evidence;

(3) The facts which the witnesses or evidence will establish; and

(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.

The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence.

Wayne testified at the hearing on the motion for new trial. In denying the motion for new trial, the trial court explained:

> That's about what I say to everybody, but in any event even if -- and let me also say, Mr. Jones's testimony I did not find to be -- I found it to be minimally helpful to the defense. Mr. Jones indicated that he said he saw the silhouette. He saw the person doing the shooting. He saw -- he didn't acknowledge that he actually could make out who the person was, but he said he saw and he said when he was looking down on the ground, he said he was looking for the joint that he dropped or whatever, that Mr. Wyatt was more in the middle in between the two buildings and that he would have had a good -- you know, he would have been able to see where the shooting happened.
>
> So that doesn't do you a whole lot of -- I mean that doesn't help the defense very much, and, frankly, Jeremy Wyatt is not the main witness. I mean if Jeremy Wyatt, even if he were the only person, you know, to testify and identify the defendant, I still don't think it would rise to the level of what is required under the law, but still, I mean there were other witnesses that testified and I can't remember her name, but the poor lady that didn't really know Mr. Morgan that long, that was in love with him, and testified about what she was told they were going to do as far as trying to have a defense, or try to have -- one brother was going to try to cover for the other brother, but in any event the standard is under article 851.3, and it states, "The court, on motion of the defendant, shall grant a new trial whenever," number three, "new and material evidence that notwithstanding the exercise of reasonable diligence by the defendant was not discovered before or during the trial is available and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."
>
> Well, two things. Number one, I don't think it was through the exercise of reasonable diligence. Actually, you were made aware during the trial and you didn't make a reasonable effort to go out there and try to talk to Mr. Jones, and even if you had talked to him and his testimony had been introduced at trial, in light of all the evidence it doesn't even come close to meeting the standard to say that if the evidence had been introduced at trial that it probably would have changed the verdict or judgment of guilty. I don't find Mr. Jones's testimony to, as I said, really have added or helped the defense appreciably in any way.

Some of the trial testimony illustrates the trial court's point regarding diligence. During Defendant's cross-examination of one of the detectives, Kirt Farquhar, the following colloquy occurred:

Q     When was the last time you talked to Wayne Jones?

A    Last night.

Q    You talked to him last night?

A    That's correct.

Q    Okay.  Did he indicate that he was testifying here today?

A    He didn't tell me one way or the other whether he would.

Q    Okay.  Where -- where did you -- where is Wayne Jones located?

A    Right now, I have no idea.

Later, at the close of the final day of taking evidence, the State noted for the record that "during one of the breaks" it had informed defense counsel that Wayne was incarcerated in Calcasieu Parish.  Defendant's attorney was present but did not comment.  Closing arguments began the next morning.

The fourth circuit has explained:

> In determining whether to grant a defendant's motion for a new trial, the trial judge should consider four factors: (1) whether the new evidence was discovered after the trial; (2) whether the failure to discover the evidence was due to the defendant's lack of diligence; (3) whether the evidence is material to the issues at trial; and (4) whether the newly discovered evidence is of such a nature that it will probably produce a different verdict in the event of retrial.  *See* La.Code Crim. Proc. art. 851(3).  The trial judge has "much discretion" in ruling on a motion for a new trial and, upon review, this court may only set aside the judgment upon a finding that the trial judge exercised his discretion in an arbitrary manner. *State v. Hammons*, 597 So.2d 990, 994 (La.1992).

*State v. Lewis*, 05-973, pp. 3-4 (La.App. 4 Cir. 5/24/06), 943 So.2d 1100, 1102, *writ denied*, 06-1621 (La. 3/9/07), 949 So.2d 437.

The colloquies above show that Defendant cannot meet the first two *Lewis* factors.  He had information regarding Wayne's whereabouts before the close of trial.  Further, he had an indication from the State's fourth witness, Detective Farquhar, that Wayne was accessible. The record shows that trial counsel did not make any use of such information.

13

Defendant also falls short regarding the fourth factor, since Wayne testified at the hearing that he saw the shooter's silhouette. As the trial court observed, said testimony bolstered, rather than detracted from, evidence that Jeremy Wyatt was in a position to see the shooting.

For the reasons discussed, this assignment lacks merit.

*Questioning of Jeremy Wyatt Regarding Drug Activity*

In his last assignment of error, Defendant argues the trial court erred by preventing him from questioning Jeremy Wyatt about his possible involvement in drug-related activities with Defendant's brother, Darren. Defendant argues the trial court's ruling impaired his constitutional right to present a defense. In the proceeding below, Defendant filed a motion to cross-examine Jeremy about said alleged activities on the theory that Darren was his customer and, thus, could have implicated him in illegal drug transactions.

The fifth circuit has stated:

> A criminal defendant has a constitutional right to present a defense. In *State v. Casey*, 99-0023 (La.1/26/00), 775 So.2d 1022, 1037, the Louisiana Supreme Court noted:
>
>> To this end, a defendant should be allowed to present evidence on any relevant matter. However, the right to present a defense is not without limits and the state retains a legitimate interest in barring unreliable evidence from criminal trial.
>
> In *State v. Howard*, 01-5 (La.App. 5 Cir. 4/24/01), 786 So.2d 174, (quoting *State v. Fisher*, 96-0004 (La.App. 4 Cir. 4/2/97), 692 So.2d 713, 720, *rev'd on other grounds and remanded*, 97-1133 (La.9/9/98), 720 So.2d 1179), this Court outlined the law pertaining to a criminal defendant's right to cross-examination as follows:
>
>> A criminal defendant's right to cross-examination is a fundamental right guaranteed by the Sixth Amendment of the United States Constitution applicable to the states through the Fourteenth Amendment. The right is further guaranteed by the Louisiana Constitution and the Louisiana Code of Evidence. The right to cross-examine a witness includes the right to question the witness concerning any

14

> bias or self-interest attached to the witness's testimony. However, the right to confrontation is not so unlimited as to require permitting a defendant on cross-examination of state witnesses to make any and all inquiries of whatever character. The inquiry must be relevant.

*State v. Bowen*, 01-594, pp. 5-6 (La.App. 5 Cir. 12/26/01), 806 So.2d 749, 752-53, *writ denied*, 02-264 (La. 10/25/02), 827 So.2d 1170 (footnotes omitted).

At the hearing on the motion, Jeremy denied knowing either of the Morgan brothers. Defendant's investigator, Dawn Kelly, testified that Darren told her that he and Jeremy sold drugs. Darren did not testify; instead he invoked his constitutional right against self-incrimination.

At the motions hearing held on April 15, 2011, the trial court observed:

> I don't see how we get to where you're asking questions that you don't have any way of corroborating when you already know what the witness has said about that, and if you believe so strongly that it's true and you have evidence because you want to show that bias, you need to have something to demonstrate, not just your question. You want your question to be evidence. That's the problem. You want your question to be evidence that the jury is going to hear so that they think he's a drug dealer with nothing else to support it. That's what you want to do from what I'm hearing and you already heard him say no, I didn't deal drugs with these people. I don't know them or whatever. If you've got some way to impeach them, impeach him, with his statement or whatever then -- or show bias based on other witness testimony that's fine, but if you don't have anything else you can't just, knowing what the answer is going to be, knowing you don't have anything to base it on other than that you think it's true and that's your theory, that's not enough.

The trial court reconvened on May 25 and excluded Defendant's proposed line of questioning due to the lack of any corroborating evidence.

Because the right to confrontation is not so unlimited as to require permitting a defendant to make any and all inquiries of whatever character in cross-examining State witnesses without regard to relevance, and because there was a lack of corroboration for Defendant's theory, the trial court did not err in preventing him from questioning Jeremy about his possible involvement in drug-related activities with Defendant's brother, Darren. This assignment of error lacks merit.

## DECREE

For the reasons above, we affirm Defendant's conviction for second degree murder.

**AFFIRMED.**